**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – –X

| | | |
|---|---|---|
| DIEGO MEJIA, | : | Civ. No. |
| *Plaintiff*, | : | 1:23-cv-7259 |
| v. | : | **COMPLAINT** |
| 425 EAST 26TH STREET OWNERS CORP, JERSEY PROPERTIES LLC, UNITED MANAGEMENT CORP., ARTHUR WEINER, and MEIR BOUSKILA, | : | |
| *Defendants*. | : | **JURY TRIAL DEMANDED** |

– – – – – – – – – – – – – – – – – – – – – – – – – X

DIEGO MEJIA ("Plaintiff"), by and through his attorneys, NEW YORK LEGAL ASSISTANCE GROUP, for his Complaint against 425 EAST 26TH STREET OWNERS CORP, JERSEY PROPERTIES LLC, UNITED MANAGEMENT CORP., ARTHUR WEINER and MEIR BOUSKILA (collectively, where appropriate, "Defendants"), alleges upon knowledge as to himself and his own actions and otherwise upon information and belief as follows:

## NATURE OF ACTION

1.      Plaintiff DIEGO MEJIA, who worked for Defendants—a collection of interrelated companies and individuals based out of the same business office and operating (among numerous other properties) three residential apartment buildings at which Plaintiff worked and—brings this action for damages and equitable relief, pursuant to (a) the three-year statute of limitations for a willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and (b) the six-year statute of limitations for a violation of New York Labor Law ("NYLL") § 650 *et seq.* and the New York Commissioner of Labor's Wage Order (the "Wage Orders,") codified at 12 N.Y.C.R.R. § 141 *et seq.,* based upon the following acts and/or omissions that Defendants committed.

2.     On or around July 2016 through December 7, 2020, Plaintiff worked for Defendants as a porter who provided building maintenance and janitorial services at 425 East 26th Street, Brooklyn NY 11226 ("425 East 26th) and painting and major repair services at 351 and 355 Fifth Avenue Brooklyn, NY 11226 (respectively, "351 Fifth Avenue" and "355 Fifth Avenue").

3.     Defendants failed to pay Plaintiff the wages lawfully due to him under the FLSA, the NYLL, and the Wage Orders.

4.     Plaintiff worked an average of ninety-one hours per week for Defendants at 425 East 26th, 351 Fifth Avenue, and 355 Fifth Avenue.

5.     Defendants paid Plaintiff a flat rate of $446/week for all hours worked across the three buildings, resulting in a regular rate of $4.90/hour—short of the minimum pay requirements under the NYLL and 12 NYCRR § 141-1.3 and short of the federal minimum wage under the FLSA, 29 U.S.C. § 201.

6.     Because Defendants willfully violated the FLSA with respect to Plaintiff's minimum wage and overtime compensation, as detailed in this Complaint, the statute of limitations for Plaintiff's FLSA claims regarding his overtime work is three years.

7.     The recoverable period for Defendants' FLSA violations thus runs from September 28 2020, three years from the date of filing, through Plaintiff's last day of work before discharge on April 20, 2021.

8.     Because of the 228-day period during which all time limits for claims and filings under New York State law were tolled pursuant to Executive Orders 202.8, 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67, the recoverable period under the NYLL for Defendants' wage, overtime, and recordkeeping violations begins on February 12, 2017, which is a period of six years and 228 days back from the date of filing this Complaint.

9.      In violation of NYLL § 191 (1)(a)(i), Defendants failed to pay Mr. Mejia on a weekly basis, and instead paid him on a monthly basis or, on occasion, every fifteen days.

10.     In violation of 12 NYCRR § 141-2.3, Defendants did not post a conspicuous notice of the order controlling Superintendent wages in Mr. Mejia's work places or provide Mr. Mejia with accurate wage statements throughout his time working for Defendants.

11.     In violation of NYLL § 198 (1-b) and (1-d), Defendants failed to provide Mr. Mejia with a hiring notice within ten days of his hiring or weekly wage statement reflecting his name, hourly pay, deductions, employer's name, address and telephone, the day of the payment, or any allowances towards the minimum wage.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 (original federal question jurisdiction) and 1337 (interstate commerce).

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), because those claims derive from the same common nucleus of operative facts as Plaintiff's federal cause of action.

14.     Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

15.     Plaintiff is a resident of New York.

16.     At all times relevant to this action, Plaintiff was an employee engaged in "interstate commerce" within the meaning of the FLSA.

17.     Plaintiff was Defendants' employee providing services at three buildings: 425 East 26th (owned by Defendants 425 East 26th Street Owners Corp. and Arthur Weiner) and 351 and 355 Fifth Avenue (both owned by Defendants Jersey Properties, Arthur Weiner, and Meir Bouskila).

3

18.     At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of NYLL §§ 2, 190, and 651.

19.     Defendant 425 East 26th Street Owners Corp. is a domestic business corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 166 Montague Street, Brooklyn, NY 11201.

20.     Defendant 425 East 26th Street Owners Corp. owns and operates the premises located at 425 East 26th Street, Brooklyn 11201.

21.     Defendant's building at 425 East 26th Street Brooklyn, NY 11201 is a residential apartment building registered with 80 units.

22.     Upon information and belief, at all times relevant, Defendant 425 East 26th Street Owners Corp. was, and continues to be, a business or enterprise engaged in interstate "commerce" employing more than two (2) employees and earning gross annual sales over $500,000.

23.     Upon information and belief, at all relevant times hereto, Defendant 425 East 26th Street Owners Corp. has been and continue to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

24.     Defendant 425 East 26th Street Owners Corp. has been Plaintiff's employer within the meaning of the NYLL §§ 2, 190, and 651.

25.     Defendant 425 East 26th Street Owners Corp. was one of the two employers who issued Mr. Mejia's paychecks.

26.     Defendant 425 East 26th Street Owners Corp., by and through its agents and in conjunction with the rest of the Defendants below, controlled the terms of Mr. Mejia's work as a porter at 425 East 26th.

27.    Defendant Jersey Properties is a domestic business corporation, organized and existing under the laws of the State of New York, and also has its principal place of business at 166 Montague Street, Brooklyn, NY 11201.

28.    Defendant Jersey Properties owns and operates the other two buildings Mr. Mejia worked at, which were located at 351 and 355 Fifth Avenue, Brooklyn, NY 11215.

29.    Defendant Jersey Properties' buildings at 351 and 355 Fifth Avenue are residential buildings with six units each.

30.    Upon information and belief, at all times relevant, Defendant Jersey Properties was a business or enterprise engaged in interstate "commerce" employing two (2) or more employees and earning gross annual sales over $500,000.

31.    Upon information and belief, at all relevant times hereto, Defendant Jersey Properties has been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

32.    Defendant Jersey Properties has been Plaintiff's employer within the meaning of the NYLL, §§ 2, 190, and 651.

33.    Defendant Jersey Properties was the other employer that issued some of Mr. Mejia's paychecks.

34.    United Management Corp. ("United Management") is a domestic business corporation organized and existing under the laws of the State of New York and also has its principal place of business at 166 Montague Street, Brooklyn, NY 11201.

35.    United Management is registered on the New York State Department website as the Managing Agent for buildings owned by Jersey Properties located at 351 Fifth Avenue, Brooklyn, NY 11215 and 355 Fifth Avenue, Brooklyn, NY 11215.

36.     Upon information and belief, at all times relevant, Defendant United Management was, and continues to be, a business or enterprise engaged in interstate "commerce" employing more than two (2) employees and earning gross annual sales over $500,000.

37.     Upon information and belief, at all relevant times hereto, Defendant United Management has been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

38.     Defendant United Management has been Plaintiff's employer within the meaning of NYLL §§ 2, 190, and 651.

39.     United Management, by and through its agents, has represented itself to Mr. Mejia as his employer.

40.     Hugo Barrios, an employee of United Management, was Mr. Mejia's primary supervisor and served as a primary messenger of management decisions between Mr. Mejia and the owners of United Management, Jersey Properties, and 425 East 26th Street Owners Corp.: Mr. Wiener and Mr. Bouskila.

41.     Upon information and belief, Defendants Arthur Weiner and Meir Bouskila reside in the State of New York and are owners, managers and/or officers of the other defendants in this action: 425 East 26th Street Owners Corp., Jersey Properties, and United Management.

42.     Defendants Arthur Weiner and Meir Bouskila hired Plaintiff, helped set Plaintiff's compensation, schedules, and method of compensation, paid his salary, and maintained any employment records.

43.     Both Defendants Arthur Wiener and Meir Bouskila had the power to hire and fire employees: both were present at the initial meeting at 166 Montague Street to approve of Mr. Mejia's hiring, and upon information and belief, both were aware of and directed his termination.

6

44.     Upon information and belief, Mr. Barrios could not make any major employment decisions with respect to Mr. Mejia or any other of Defendants' employees without Mr. Wiener or Mr. Bouskila's authorization.

45.     Upon information and belief, Defendants Wiener and Bouskila own a collective 59 buildings—including the three for which Mr. Mejia provided services—with over three thousand units between them.

46.     Upon information and belief, at all relevant times hereto, Defendants Wiener and Bouskila have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

47.     Defendants Weiner and Bouskila were Plaintiff's employers within the meaning of the NYLL §§ 2, 190, and 651.

48.     Defendants Wiener and Bouskila exercised sufficient operational control over Defendants 425 East 26th Street Owners Corp., Jersey Properties, and United Management to be considered Plaintiff's employers under FLSA, NYLL, and the Wage Orders.

49.     Through a unified operation under common control for a common business purpose, Defendants 425 East 26th Street Owners Corp., Jersey Properties, United Management, Arthur Weiner, and Meir Bouskila are a single enterprise, and therefore FLSA coverage applies. FLSA § 203(r)(1).

50.     Defendants share common ownership and financial control: Defendants Arthur Weiner and Meir Bouskila have an ownership interest in Defendants Jersey Properties, United Management, and 425 East 26th Street Owners Corp.

51.     Upon information and belief, Defendant 425 East 26th Street Owners Corp. owns 425 East 26th, and also has its principal place of business at 166 Montague Street.

52.     Upon information and belief, Defendant Jersey Properties owns 351 and 355 Fifth Avenue, the other two properties Mr. Mejia was assigned to, and also has its principal place of business at 166 Montague Street.

53.     Defendant United Management manages all three residential buildings that Mr. Mejia worked at: 425 East 26th, 351 Fifth Avenue, and 355 Fifth Avenue.

54.     Defendants shared centralized control of their labor relations with Plaintiff: all five Defendants shared the same principal place of business (166 Montague Street, Brooklyn, NY, 11201), participated in hiring Plaintiff, jointly set forth his job duties, hours, and pay, and jointly terminated him. Plaintiff received some paychecks addressed from 425 East 26th Street Owners Corp. and others addressed from Jersey Properties.

55.     Upon information and belief, all five Defendants share and exercised common management over many employees, including Plaintiff, Hector Guzman (the residential janitor of 425 East 26th), Plaintiff's direct manager Hugo Barrios, Plaintiff's brother Jose Mejia, and others.

56.     Defendants, as owners and/or officers of United Management, Jersey Properties, and 425 East 26th Street Owners Corp., would interchangeably call Mr. Mejia to instruct him to fulfill urgent maintenance requests.

57.     Upon information and belief, Defendants shared accounts at material and hardware suppliers from which Mr. Mejia would procure work materials through a credit line.

58.     Upon publicly available data and Plaintiff's own accounts of four years working for Defendants, all five Defendants maintain the same business address and largely overlapping ownership, management, and personnel, and are involved in the same industry, thus constituting a single enterprise.

59.     The unlawful acts charged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives.

60.     All such acts were undertaken by individuals actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

## FACTUAL ALLEGATIONS

61.     In or around June 2016, Mr. Mejia was hired as porter by Defendants.

62.     Mr. Mejia learned of the job through his brother, Jose Mejia, the residential super of another property owned by Defendants.

63.     Mr. Mejia's brother told him that the residential super of 425 East 26th Street, Hector Guzman (Mr. Guzman), was on vacation and that Defendants needed to hire someone as a long-term porter who could also, while Mr. Guzman was on vacation, cover for some of his duties.

64.     Defendants had employed Mr. Guzman, the residential janitor at 425 East 26th Street, for many years prior to Mr. Mejia employment with Defendants, and continued to employ him as the residential janitor of the building through the entire time that Mr. Mejia worked for Defendants.

65.     Upon learning of the job opportunity, Mr. Mejia had an initial hiring conversation with manager Hugo Barrios (Mr. Barrios), who, upon information and belief, was authorized by Mr. Wiener and/or Mr. Meir to hire someone to fill this position.

66.     Mr. Barrios is an employee of Defendant United Management and manages the employees of *at least* the three buildings at which Mr. Mejia worked, and upon information and belief, the employees of many of Defendants' other buildings.

67.     Mr. Barrios, on behalf of Defendants Wiener and Bouskila, communicated to Mr. Mejia that he would be paid $300/week as a porter for 425 East 26th Street, Brooklyn, New York 11226, but that he would help advocate for Mr. Wiener and Bouskila to raise the weekly rate for that building to $400/week.

68.     As a porter, Mr. Mejia's duties at 425 East 26th included maintaining the building's common areas, cleaning and maintaining the building's outdoor areas (including salting the sidewalks ahead of winter weather and removing snow and ice), regularly taking out the trash and recycling, clearing the garbage chutes, and responding to tenant requests (including emergency requests), among other tasks.

69.     During the initial hiring meeting, Mr. Barrios, on behalf of Defendants, also hired Mr. Mejia for extra painting, maintenance, and repair work at two of Defendants' other residential buildings, located at 351 and 355 Fifth Avenue, Brooklyn, NY 11215.

70.     Mr. Barrios, on behalf of Defendants Wiener and Bouskila, told Mr. Mejia that he would earn an additional flat fee of $200/week for providing the painting and repair services at both 351 and 355 Fifth Avenue, but in practice Defendants only paid Mr. Mejia $200/month for this work.

71.     A month after Mr. Mejia commenced work, he went to 166 Montague Street—the business office associated with all five Defendants in this action—to meet with Defendants Mr. Wiener and Mr. Bouskila to receive his first paycheck.

72.     This was the first of many times that Mr. Mejia went to the office at 166 Montague Street for various work-related transactions with Defendants.

73.     In the nearly four years of employment that followed, Mr. Mejia's terms and conditions of employment were controlled by all five Defendants as a single enterprise.

74.     Upon information and belief, Defendants Mr. Wiener and Mr. Bouskila share ownership interest in the three buildings in which Mr. Mejia worked—425 East 26th and 351 and 355 Fifth Avenue— and also share ownership interest in Defendant Companies United Management, and Jersey Properties.

75.     Defendant 425 East 26th Street Owners Corp owns the residential multi-unit building located at 425 East 26th Street Brooklyn, NY 11201, and has its principal place of business at 166 Montague Street.

76.     Defendant Jersey Properties owns the two multi-unit residential buildings located at 351 and 355 Fifth Avenue and has its principal place of business at 166 Montague Street.

77.     Defendant United Management manages all three residential buildings that Mr. Mejia worked at: 425 East 26th Street, 351 Fifth Avenue, and 355 Fifth Avenue.

78.     Defendants shared centralized control of the employment relationship with Plaintiff: Mr. Wiener and Mr. Bouskila, as officers of the three corporate Defendants, jointly hired Plaintiff, set forth his job duties, hours, and pay, and terminated him.

79.     Upon information and belief, all five Defendants share and exercised common management over many other employees, too, including 425 East 26th residential janitor Mr. Guzman, Plaintiff's direct manager Mr. Barrios, Plaintiff's brother Jose Mejia, and others.

80.     Defendants, as owners and/or officers of United Management, Jersey Properties, and 425 East 26th, would interchangeably call Mr. Mejia to instruct him to fulfill emergency requests from tenants, including emergency maintenance, remodeling, cleaning and painting kitchen and bathroom ceilings, repairing and replacing kitchen floors, and fixing ceiling leaks at all three properties.

81.     Mr. Barrios regularly directed Mr. Mejia's work on behalf of Defendants, including sending Mr. Mejia from one of Defendants' buildings to the next to perform repairs and other work.

82.     Upon information and belief, Defendants shared accounts at material and hardware suppliers from which Mr. Mejia and their other employees would procure work materials through a credit line.

<u>Mr. Mejia's Schedule</u>

83.    Mr. Mejia worked seven days per week, and most days he worked at all three properties to which he was assigned by Defendants.

84.    Defendants did not keep a system to track Mr. Mejia's hours or, upon information and belief, the hours of any of their employees.

85.    From Monday through Friday, Mr. Mejia would complete his porter duties at 425 East 26th, beginning at 8 a.m. until he finished his work, which was scheduled to be at 4 PM but often was several hours later due to emergency requests (across all three buildings) that he would receive from Defendants throughout the day.

86.    He would also work, on average, eight hours doing his porter work at 425 East 26th on Saturdays and Sundays.

87.    In addition to completing his duties at 425 East 26th, Mr. Mejia would work another five hours every day, Monday through Sunday, at 351 and/or 355 Fifth Avenue to perform building repairs and painting jobs.

88.    Mr. Mejia's workload was so heavy that he did not have a lunch break.

89.    As a result, in total, Mr. Mejia worked approximately 91 hours each week between  425 East 26th, 351 Fifth Avenue, and 351 Fifth Avenue.

<u>Mr. Mejia's Pay</u>

90.    Upon hire, Mr. Barrios notified Mr. Mejia that Defendants decided he would be paid $300 per week, with a promise of a later increase in pay to $400 per week.

91.    Upon instruction from Defendants, Mr. Barrios also told Mr. Mejia that he would be paid an additional $200 per week for the work performed at two of Defendants' other buildings, 351 and 355 Fifth Avenue.

92.     Defendants actually paid Mr. Mejia only $200 per *month* for his work at the 351 and 355 Fifth Avenue properties, resulting in a total of $46.16 per week for that work.

93.     Defendants effectively paid a total of $446.15 per week for all work Mr. Mejia performed for Defendants.

94.     Defendants paid a flat rate, despite Mr. Mejia working a varied number of hours each week, always amounting to well over 40 hours per week.

95.     Based on his pay and hours worked, Mr. Mejia was paid $4.90 per hour.

96.     Shortly after beginning his work at 425 East 26th and 351 and 355 Fifth Avenue, Mr. Mejia, realized he was not being paid adequately and routinely complained to Mr. Barrios.

97.     Mr. Mejia regularly requested that Mr. Barrios pass on his wage complaints to Mr. Wiener and Mr. Bouskila so that his underpayment might be rectified.

98.     Despite his complaints, Defendants continued to pay him far under both the federal and New York minimum wage for every hour work.

99.     Defendants also continued to ignore his requests to be paid one-and-one-half the minimum wage in overtime for every hour over forty (40) hours he worked.

100.     Defendants were longtime owners of residential building who, upon information and belief, had employed many employees and who thus should have been aware of the federal and state laws surrounding overtime and minimum wage.

101.     Defendants' continued refusal to pay Mr. Mejia overtime and minimum wage was a willful violation of the FLSA and a violation of NY Labor Law and the Wage Orders.

Mr. Mejia's Frequency of Pay

102.     Though Defendants, by and through Mr. Barrios, initially told Mr. Mejia that he would be paid on a weekly basis, in practice was usually only paid once a month.

103.    When he advocated for himself to be paid more frequently, Defendants would occasionally pay him every fifteen days—never on a weekly basis.

<u>Mr. Mejia's Termination</u>

104.    Mr. Mejia was terminated by Defendants in April of 2021 in retaliation for filing a worker's compensation claim.

105.    Upon information and belief, Mr. Barrios first notified Mr. Mejia of his possible termination by informing Mr. Mejia that—per Defendants' orders—Mr. Mejia would be fired unless he withdrew his worker's compensation claim.

106.    When Mr. Mejia refused to withdraw his complaint, Defendants terminated his employment on or about April 20, 2021,

107.    Upon information and belief, Defendants Mr. Bouskila and Mr. Wiener ordered Mr. Mejia's termination.

Mr. Mejia did not receive pay for at least half of the days he worked in April of 2021.

<u>Mr. Mejia's Wage Notices and Statements</u>

108.    Throughout his time working for Defendants, Mr. Mejia did not receive a notice upon hiring that set out his rate of pay or any other employment-related information.

109.    Although he was paid by check indicating the building to which his pay corresponded, Mr. Mejia was not provided a wage statement reflecting hours worked, rate of pay, or other information concerning his pay.

110.    At no point during Mr. Mejia's employment did Defendants disclose that they were required to pay overtime for more than forty hours worked in a week, either by posting the notices required by the FLSA, 29 C.F.R. § 516.4, the Building Services Wage Order at 12 NYCRR § 141-2.3, or in any other way.

111.    At no point during Mr. Mejia's employment did Defendants create a conspicuous posting in Mr. Mejia's place of work indicating that Mr. Mejia's employment was controlled by the Business Services Industry Wage Order, as required under 12 NYCRR § 141-2.3.

112.    Additionally, Mr. Mejia's wage statements never indicated an overtime rate of pay or the number of overtime hours worked, in violation of NYLL § 195(3).

## FIRST CLAIM FOR RELIEF

**(Minimum Wage Violation under the Fair Labor Standard Act, 29 U.S.C. § 206 for Failure to Pay Minimum Wage against all Defendants)**

113.    Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

114.    The FLSA provides a three-year limitations period for willful violations, meaning that the employer either knew or showed reckless disregard for whether its conduct was prohibited by the FLSA, including when the danger of violating the FLSA was so obvious that the defendant must have been aware of it. *See* 29 U.S.C. § 255(a).

115.    Additionally, the statute of limitations for the FLSA violations can be tolled where, as here, the defendant failed to post the required notice of the FLSA's protections and otherwise failed to make employees aware of their FLSA rights.

116.    Defendants have knowingly and willfully engaged in a policy, pattern or practice of violating the FLSA, as detailed in this Complaint.

117.    Throughout the statute of limitations period covered by these claims, Defendants failed to pay Mr. Mejia the federal minimum wage for each hour worked, in violation of 29 U.S.C. §§ 206(a) and 255(a).

118.    Plaintiff seeks damages in the amount of his unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

**(Overtime Wage Violation under the Fair Labor Standards Act, 29 U.S.C. § 207 *et seq*. for Failure to Pay Overtime against all Defendants)**

119.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

120.    Mr. Mejia was an "employee," as defined by the FLSA, and was thus not exempt from the right to receive overtime pay. 29 U.S.C. § 203.

121.    Defendants were Mr. Mejia's "employers" and were covered by the FLSA's requirements: they owned and operated an enterprise engaged in interstate commerce with an annual gross volume of business of at least $500,000. 29 U.S.C. § 203(d), (s)(1).

122.    The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

123.    Employers are required to inform employees of their right to receive an overtime rate of pay by posting a notice in a conspicuous place explaining (among other things) overtime requirements. 29 C.F.R. § 516.4.

124.    Defendants violated 29 U.S.C. §§ 207(a)(1) and 215(a) by knowingly failing to compensate Mr. Mejia at the rate of one and one-half of his regular hourly pay for all time worked in excess of forty hours in any given workweek.

125.    Defendants' violations of this provision of the FLSA were repeated, willful, and intentional.

126.    Plaintiff seeks damages in the amount of his unpaid overtime compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF

**(Minimum Wage Violation under the New York Labor Law § 652 For Failure to Pay Minimum Wage against all Defendants)**

127.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

128.    Defendants knowingly and willfully paid Plaintiff Mejia less than the minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

129.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

130.    The statute of limitations for a claim based on New York wage law is six years. The six-year statute of limitations is "tolled from the date an employee files a complaint with the commissioner." NYLL §§ 198(3), 663.

131.    Plaintiff seeks damages in the amount of his unpaid minimum wage compensation, liquidated (double) damages as provided by NYLL, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

**(Overtime Wage Violations under the New York Labor Law § 650 *et seq.* for Failure to Pay Overtime against all Defendants)**

132.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

133.    New York law prohibits an employer from permitting an employee to work without paying overtime wages of 150% of his or her regular rate for all hours worked in excess of forty (40) in any workweek.

134.    Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly and repeatedly failed to pay Plaintiffs and others similarly situated at the required overtime rates, one and a half times their regular rate of pay, for hours worked in excess of forty (40) per work week.

135.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

136.    At all times relevant to this action, Mr. Mejia was an "employee" and Defendants were his "employers" within the meaning of NYLL § 651.90.

137.    New York Labor law and its implementing regulations require covered employers to pay covered employees overtime wages of one and one-half times those employees' regular hourly rate of pay for every hour worked in excess of forty hours in a workweek. NYLL §§ 650, 652, 653, 655(5)(b); 12 NYCRR. § 141 *et seq*.

138.    Defendants knowingly failed to compensate Mr. Mejia at this required overtime rate.

139.    Defendants' violations of New York Labor Law and regulations were repeated, willful, and intentional.

140.    The statute of limitations for a claim based on New York wage law is six years. The six-year statute of limitations is "tolled from the date an employee files a complaint with the commissioner." NYLL § 198(3).

141.    Plaintiff seeks damages in the amount of his unpaid overtime compensation, liquidated (double) damages as provided by New York Labor Law and the Wage Orders, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper

## FIFTH CLAIM OF RELIEF

### (Violation of New York Labor Law § 191 (1)(a)(i) For Failure to Pay Manual Worker on a Weekly Basis)

142.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

143.    At all times relevant to this action, Mr. Mejia was an "employee" and Defendants were his "employers" within the meaning of NYLL § 651.

144.    Under NYLL § 191(1)(a)(i), Defendants were required to pay Mr. Mejia—who exclusively performed manual labor in his employment—on a weekly basis.

145.    In violation of § 191(1)(a)(i), Defendants usually paid Mr. Mejia on a monthly basis.

146.    On rare occasions and only in response to Mr. Mejia's requests, Defendants would pay Mr. Mejia every fifteen days—but this still violated § 191(1)(a)(i).

147.    The statute of limitations for a claim based on New York wage law is six years. The six-year statute of limitations is "tolled from the date an employee files a complaint with the commissioner." NYLL § 198(3).

148.    An employer who violates NYLL § 191(1), 198 (1-d) is liable for up to one hundred percent of the total amount of the wages found to be due in liquidated damages.

## SIXTH CLAIM FOR RELIEF

### (Violation of New York Labor Law § 195 (1)(a) and (3) *et seq.* For Failure to Provide Notice of Hiring and Wage Statements Reflecting Overtime Rate and Hours Worked against all Defendants)

149.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

150.    At all times relevant to this action, Mr. Mejia was an "employee" and Defendants were his "employers" within the meaning of NYLL § 651.

151.    Defendants violated NYLL § 195(1)(a) by failing to provide Mr. Mejia, upon hiring, with a notice containing "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances….[and] the regular hourly rate and overtime of pay" in both English and the language identified by the employee as his primary language (Spanish).

152.    Defendants also violated NYLL § 195(3) by failing to furnish Mr. Mejia with a statement that includes his "overtime rate or rates of pay . . . and the number of overtime hours worked" with every payment of wages.

153.    As per NYLL §§ 198 (1-b) and (1-d), Defendants are liable for damages corresponding to 1) failure to provide Mr. Mejia a hiring notice within ten days of his hiring and 2) weekly wage statement reflecting his name, hourly pay, deductions, employer's name, address and telephone, the day of the payment, or any allowances towards the minimum wage.

154.    For Defendants' violation of § 195(1), Defendants are liable for damages of fifty dollars for each work day that the violations occurred up to five thousand dollars. NYLL § 198(1-b).

155.    For Defendants' violation of § 195(3), they are liable for damages of two hundred and fifty dollars for each work day that such information is not provided, not to exceed five thousand dollars. NYLL § 198(1-d).

## **PRAYER FOR RELIEF**

156.    WHEREFORE, Plaintiff respectfully requests that this Court declare that Defendants willfully violated Plaintiff's rights under the FLSA and NYLL.

157.    Enjoin Defendants to comply with all applicable federal and state wage laws

158.    Award Plaintiff damages sustained as a result of Defendants' violations of FLSA 29 U.S.C. § 206(a), *et seq*. including unpaid minimum wage, plus an additional amount as liquidated damages.

159.    Award Plaintiff damages sustained as a result of Defendants' violations of FLSA 29 U.S.C. § 207(a), including unpaid overtime wages, plus an additional equal amount as liquidated damages.

160.    Award Plaintiff damages sustained as a result of Defendants' violations of NYLL § 652 and its implementing regulations, including unpaid minimum wage, plus an additional amount as liquidated damages.

161.    Award Plaintiff damages sustained as a result of Defendants' violations of the New York State overtime requirement, its implementing regulations, including unpaid overtime wages, against Defendants in favor of Plaintiff, plus liquidated damages.

162.    Award Plaintiff liquidated damages for Defendants' failure to pay Plaintiff on a weekly basis, in violation of NYLL § 191(1)(a)(i).

163.    Award Plaintiff statutory damages for Defendants' violations of NYLL § 195(1)(a), the requirement to furnish Plaintiff with a notice upon hiring outlining "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances….[and] the regular hourly rate and overtime of pay."

164.    Award Plaintiff statutory damages for Defendants' violations of NYLL § 195(3), the requirement to furnish Plaintiff with a wage statement with every payment of wages indicating his overtime rate of pay and overtime hours worked for more than twenty-five weeks.

165.    Award Plaintiff pre-judgment interest on all amounts owed.

166.    Award Plaintiff his costs and reasonable attorneys' fees incurred in this action.

167.    Grant all such other further relief as allowed by law or that the Court may deem just and proper.

## JURY TRIAL DEMAND

168.    Plaintiff demands a trial by jury on all claims so triable.

Dated: New York, NY
       September 28, 2023

                             Respectfully submitted,

                             Elissa S. Devins
                             NEW YORK LEGAL ASSISTANCE GROUP
                             100 Pearl Street, 19th Floor
                             New York, New York 10004
                             (646) 283-4175