

January 22, 2025

**VIA ECF**
Hon. Lara K. Eshkenazi, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom N322
Brooklyn, NY 11201

Re:   D. Mejia v. 425 E. 26th Street Owners Corp., et al.,
      Case No. 1:23-cv-07259-LDH-LKE

Dear Judge Eshkenazi:

Pursuant to Your Honor's Individual Practice Rule 3.B.2, and in light of Defendants' letter motion to delay discovery and their prior unwillingness to proceed with agreed upon negotiation attempts and discovery—resulting in substantial prejudice to Plaintiff—Plaintiff respectfully requests to withdraw from the settlement conference process and opposes any proposed stay of or extension to the prior Scheduling Order.[1]

Through his complaint, Plaintiff alleges that Defendants knowingly exploited Plaintiff by failing to pay him appropriately for all of the long hours he worked cleaning and maintaining three of Defendants' buildings as a porter and non-residential janitor. Plaintiff alleges that he worked upwards of 90 hours per week but was never paid minimum and overtime wages. Because of Defendants' failure to comply with the record keeping provisions of the FLSA and NYLL, there are no official records proving the amount of hours that Plaintiff worked, and this factual circumstance has unsurprisingly become a critical aspect of this litigation. Although in such circumstances, the burden is on Defendants to rebut Plaintiff's reasonable testimony with specificity[2], the depositions, document production and interrogatories Plaintiff now seeks are indispensable to assessing each party's litigation risks and facilitating possible settlement positions.

---

[1] Plaintiff's counsel was drafting this response to Defendants' letter motion when it received the Court's order granting the motion. Plaintiff's counsel respectfully requests the Court to allow for arguments on that motion, presented here, rather than holding in an ex-parte fashion. It is our understanding that pursuant to the Court's rules, III.B.2, Plaintiff had three days to respond. To be clear however, Plaintiff both opposes any request for a stay or extension, and simultaneously requests to withdraw from the settlement conference process altogether.

[2] *See, e.g. Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012)("[W]hen an employer fails to maintain accurate records…courts have held that the plaintiff's recollection and estimates of hours worked are presumed to be correct.")(internal citations omitted); *Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 43 (E.D.N.Y. 2015)(holding same); *Pineda v. Masonry Const., Inc*., 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011)( "If an employer fails to keep such records, the plaintiff may meet his burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.")(internal citations omitted). With regards to the New York Labor Law, the Defendants' burden is even more strict due to stricter statutory recordkeeping obligations: "[F]ailure of an employer to keep adequate records ... shall not operate as a bar to filing of a complaint by an employee. In such a case the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits, and wage supplements." N.Y. Lab. Law § 196–a.

Although Plaintiff participated in two mediations, as explained in detail below, **Plaintiff now believes Defendants have demonstrated an abusive pattern of constraining his discovery rights and bullying Plaintiff into settlement negotiations on unconsented to terms.** Plaintiff therefore now seeks to move forward with discovery and the pre-trial process as previously stipulated by parties, as ordered by the August 14, 2024 Scheduling Order, Dkt. 21. In contrast to Defendants' contention that fundamental fairness and a balancing of prejudices favors a stay in discovery, as the foregoing discussion shows, Plaintiff has already been substantially harmed by Defendants' pre-trial conduct and respectfully requests this Court to prevent Defendants from further engaging in such behavior.

I.  **Defendants Have Engaged in a Pattern of Delay and Discovery Obstruction That Has Substantially Prejudiced Plaintiff**

Throughout this litigation, Defendants have repeatedly delayed progress by failing to respond to communications in a timely fashion, falsely intimating intention to move forward with certain stipulations, and ultimately backing out on prior agreements, including those made in front of this Court. Although Plaintiff has repeatedly responded with professional courtesy, this behavior has substantially prejudiced Plaintiff, restrained his ability to conduct discovery needed to pursue his claims, and threatens to continue to delay proper adjudication. As examples:

1. Defendants' Initial Delay Tactics Resulted in Substantial Prejudice To Plaintiff.

Over a year before Plaintiff filed this Complaint, and after having received our initial demand letter, the Parties' counsel conferred and agreed to a tolling agreement in order to engage in settlement conversations while preserving claims and avoiding further legal action. Plaintiff e-mailed a draft tolling agreement to Mr. Pischl, current counsel for all Defendants, in August 2022. Mr. Pischl e-mailed one response on September 20, 2022[3] and another on October 14, 2022. On neither occasion did he provide a substantive response to Plaintiff's draft tolling agreement, simply apologizing for delays. Mr. Pischl then maintained a strict radio silence despite our frequent courteous e-mails to engage in the agreed upon settlement negotiations, mindful of the underlying statutes of limitations. Only until after we filed our complaint in September 2023 did Mr. Pischl finally respond to our e-mails, requesting a 30-day extension to respond, which we granted as a courtesy, despite the prior almost year-long silence.

Meanwhile, Plaintiff alleges that Defendants made efforts to evict Plaintiff, including bullying him by calling several city and state agencies to have him and his family removed. Defendants ultimately succeeded in evicting Plaintiff, despite Plaintiff's allegations that the employment termination leading to the eviction was unlawful. And despite their silence with regards to this case, Defendants separately fought Plaintiff's workers' compensation case aggressively[4]. It is not lot on Plaintiff that Defendant's abusive conduct while pretending to be interested in settling his claims sought to increase Plaintiff's desperation to settle by destabilizing his living conditions.

---

[3] I refrain from appending the relevant e-mail exchanges here as to not burden the Court and out of courtesy to Defendants' counsel. However, copies of the e-mails can be provided upon request.

[4] Plaintiff lived in one of the buildings that he worked as a porter and was evicted by the Defendants following a termination that Plaintiff alleged in a separate workers' compensation claim was unlawful. In New York, workers granted an apartment as part of their employment arrangement have no tenant rights to that apartment upon termination of that employment. Defendants disputed the workers' compensation claim and were victorious, leading them to be able to both terminate and evict the Plaintiff, all while having, through their counsel, feigned an intention to toll his labor claims and negotiate a settlement.

**Overall, by agreeing to signin a tolling agreement in order to engage in settlement, and then falling completely silent, Defendant knowingly caused the running of the statute of limitations for almost a year of Plaintiff's possible labor-based claims. Plaintiff estimates the value of those lost claims amounts to over $25,000 in alleged unpaid wages and damages.**

2. Defendants Engaged in Mediation Without Presenting Anyone With Negotiation Authority.

On April 18, 2024, the Parties engaged in a mediation session. Defendants failed to produce anyone at the mediation with proper authority to negotiate a settlement. The mediation was unsurprisingly unsuccessful and a waste of Plaintiff's good will. Plaintiff agreed to another mediation, conditioned on the attendance of someone with settlement authority. In light of all the facts presented here, Plaintiff now believes this conduct evinces Defendants' intention to comply with the Court's mediation requirements without engaging in good faith settlement negotiations.

3. Defendants Have Already Attempted to Bully Plaintiff Into a Settlement Conference Without Completing Agreed Upon Discovery.

On August 14, 2024, a status conference was held before Your Honor, at which the proposed discovery plan was discussed, solidifying February 28, 2025 as the close of fact discovery. There, Mr. Pischl requested a settlement conference which Plaintiff had previously rejected due to the unsuccessful mediations. However, during the conference and in front of Your Honor, Plaintiff agreed to a conference strictly on the condition that limited additional discovery, including document production and depositions key to understanding Plaintiff's settlement position, were conducted prior to the conference. Mr. Pischl agreed and the conference was scheduled for November 7, 2024. We made some initial progress establishing the scope of the limited discovery. On October 3, 2024, I emailed Mr. Pischl to try to make progress on this discovery. Mr. Pischl ignored that request. On October 16, 2024, I made the same request, which again went ignored. I again made the same request on October 25, 2024, and indicated that if we were unable to proceed with the agreed upon discovery, I did not believe a settlement conference would be productive. On October 29, 2024, I e-mailed again, to which Mr. Pischl finally responded indicating his availability to speak the next day.

***During that phone call, Mr. Pischl attempted to back pedal from our prior agreement to engage in discovery prior to the settlement conference.*** He insisted that all depositions should be scheduled for after the conference and that there was no time to conduct the discovery, a dilemma entirely of Defendants' making. I refused, indicating again that further discovery is necessary to determine Plaintiff's settlement position, and reminding him that Plaintiff had only agreed to a conference contingent on additional discovery. Mr. Pischl relented and agreed to schedule three depositions (one of Plaintiff and two of Defendants), agreed to produce a set of discovery documents, and agreed to adjourn the conference to allow time for the additional discovery.[5]

---

[5] Defendants misleadingly suggest that this adjournment was prompted at Plaintiff's insistence; however, this adjournment was agreed to in order to facilitate discovery that had been delayed by Defendants. Plaintiff's second motion to adjourn the conference was agreed to by both parties as well, and was predicated on having sufficient time to receive and review transcripts from the deposition. This concords with Plaintiff's ongoing insistence that in light of the prior mediation attempts, more discovery will facilitate settlement. It is worth emphasizing that even during the conversation leading to stipulating to this adjournment, Defendant had already requested a 30 or 60 day extension on the close of fact discovery.

*Yet on November 5, 2024, Mr. Pischl again backpedaled, and indicated that despite all prior agreements, Defendants were refusing again to conduct any depositions prior to the conference.* Throughout several exchanges that followed, I reiterated that Plaintiff only consented to a conference contingent on additional discovery, which was necessary for a productive settlement conference. Mr. Pischl then suggested that participation in the settlement conference was *mandatory* and that they would oppose our withdrawal and seek sanctions. During a November 8, 2024 phone call, Mr. Pischl again refused to schedule depositions, then finally relented and agreed to consult his clients to find available deposition times. Plaintiff then filed the agreed upon motion to adjourn the conference to allow for time for these depositions, which was rescheduled for January 8, 2025.

Meanwhile, on December 4, 2024, Plaintiff once again requested an update on Defendants' promise to produce the agreed upon discovery documents, which included copies of e-mails and text messages. No response. Plaintiff made the request again on December 10, 2024. Mr. Pischl responded but did not make a production. On December 16, 2024, after Plaintiff was deposed, Plaintiff once again requested the agreed upon documents. In response, Mr. Pischl finally produced a total of 7 pages, none of which included any text messages. Mr. Pischl suggested that he was unable to get records from the phone service provider, yet made no mention of any attempt to collect screenshots and other records easily available on Defendants' phones.[6] In contrast to Mr. Pischl's contention that the agreed upon discovery was completed, Plaintiff alleges Defendants have failed to engage in a good faith attempt at providing the necessary and agreed upon documents. As with the deposition requests, Defendants have restrained Plaintiff's attempts at meaningful discovery production and have continually caused delay in the discovery process.

*Not only are these reversals to the agreements we made unprofessional and prejudicial to Plaintiff, this conduct evidences Defendants' continued disregard for the discovery process and intention to restrict Plaintiff's right to engage in the truth-finding process.* Moreover, Plaintiff has consistently remained open to out-of-court settlement negotiations, and although Defendants have articulated a shared interest in theory, they have made no attempt to engage in such a process; rather they have simply used the specter of a settlement conference to limit discovery. Overall, these actions constitute an attempt to bully Plaintiff into engaging in settlement negotiations on terms that Plaintiff explicitly did not consent to. Were it not for Plaintiff's resolve to engage in the truth-finding process, Defendants would be successful in wasting your Honor's time as well as ours by forcing Plaintiff to engage in a predictably unproductive settlement conference.

## II.   The Current Dispute

On January 15, 2025, after having received Your Honor's adjournment order to reschedule the settlement conference to March 3, I sent Mr. Pischl a courtesy e-mail to provide one of the deposition transcriptions, request the transcript in his possession, and continue the discovery process by attempting to schedule depositions of defendants (specifically Defendants Weiner, Bouskila, and United Management Corp.) After several exchanges, in response, Defendants now submit a request for a stay and extension to the discovery deadline.

---

[6] Indeed, Mr. Pischl is well aware that many of the communications requested are through the application Whatsapp, and therefore would not even be able to be provided by the service provider. Plaintiff has provided many such screenshots of relevant communications and expected to receive those in kind, especially considering Defendants are in possession of at least one the relevant phone devices.

To review, on May 17, 2024, the Parties submitted a discovery plan establishing February 28, 2025 as the close of fact discovery, which this Court approved officially on August 14, 2024 at the last Scheduling Conference. It has now become clear, in light of the preceding discussion and Defendant's current motion, that Defendants had no intention of timely completing discovery. Although Defendants claim that they do not seek relief from discovery, the current motion is simply another attempt at delaying discovery, constraining Plaintiff's right to discovery, and bullying Plaintiff into engaging in settlement negotiations on unconsented to terms, just as Defendants have done before.

Moreover, on a practical level, Plaintiff is interested in efficiently litigating his claims. Your Honor ordered the end of fact discovery to occur on February 28, 2025. If this date remains, Plaintiff intends to effectively engage in discovery to allow for a swift resolution of this matter. Additionally, were Plaintiff to engage in the settlement conference, further discovery, with respect to both depositions and document requests and interrogatories, will only help Plaintiff better assess his settlement position. The recent depositions uncovered several new avenues for investigation and the need for further discovery. Although Defendants may be convinced that further discovery will not change settlement positions, Plaintiff adamantly disagrees. Moreover, although transcripts of depositions noticed shortly may not all be available prior to the conference, were discovery to continue as previously stipulated, numerous documents and interrogatories would be exchanged prior to the conference. Nevertheless, having conducted depositions would certainly help assess settlement positions, regardless of the availability of the transcripts. Therefore, staying discovery would be prejudicial to Plaintiff.

Through their motion, Defendants implicitly admit that they had no intention of complying with the discovery order in the first place. Had they been committed to the discovery schedule, they would not now reference the costs associated with complying with the agreed-to schedule. [7] [8] Moreover, were costs that prejudicial to Defendants, Defendants could have easily continued the negotiation process outside of court. Finally, a settlement conference is no guarantee of a resolution that would obviate further discovery. And it should not, as Defendants have consistently done, be used to delay or restrict Plaintiff's attempts to utilize basic and reasonable discovery attempts. Indeed, Plaintiffs have yet to even depose the named Defendants. Although Plaintiff has stipulated to Defendants' requests for extensions in the past, given the facts presented in the preceding discussion, Plaintiff now believes the current request seeks to delay and constrict his right to engage in the discovery needed to settle or prosecute his claims.

### III. Conclusion

For these reasons, Plaintiff respectfully requests to withdraw from the settlement conference and further urges the Court not to grant Defendants' request for a stay or extension. Plaintiff is prepared to deliver its various discovery requests to Defendants immediately upon the resolution of this current dispute and does not anticipate needing additional time to complete its burden of the discovery process.

We thank the Court for its consideration of this request.

---

[7] It is unclear what Defendants mean when they write that "the burden and cost of additional discovery are not born equally and such costs primarily accrue to Defendants' detriment." Both Parties have every right to submit requests for production and interrogatories, and it is Plaintiff, not Defendants, who has indicated his desire to depose more individuals and will subsequently bear that cost.

[8] Indeed, even Mr. Pischl's out of the country schedule, which otherwise would not under any scrutiny, suggests here a lack of commitment to the agreed upon February 28 discovery closing deadline.

Respectfully Submitted,

New York Legal Assistance Group
Attorneys for Plaintiff

By: Mel Gonzalez

CC: **VIA ECF**
      CLIFTON BUDD & DEMARIA, LLP
      Attorneys for the Defendants
      Stephen P. Pischl