UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DIEGO MEJIA,

               *Plaintiff*,

        -v.-

425 EAST 26TH STREET OWNERS CORP,
JERSEY PROPERTIES LLC, UNITED
MANAGEMENT CORP., ARTHUR WEINER and
MEIR BOUSKILA,

             *Defendants*.

------------------------------------------------------------------------x

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Case No. 1:23-cv-7259-LDH-LKE

## PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

### I.    INTRODUCTION

Plaintiff Diego Mejia hereby submits his unopposed motion for approval of their FLSA Settlement Agreement with Defendants 425 East 26th St Owners Corp, Jersey Properties LLC, United Management Corp, Arthur Weiner, and Meir Bouskila.[1] This settlement resolves Plaintiff's claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and related state law claims for a total of $267,000 ("Gross Settlement Amount"). As detailed below, this proposed resolution of the Plaintiff's FLSA claims is fair and reasonable and warrants judicial approval. Upon approval of the Parties' Settlement Agreement, Plaintiff agrees to submit a Stipulation of Dismissal pursuant to Federal Rules of Civil Procedure 41. Defendants do not oppose this Motion.

Because the proposed settlement is a fair and reasonable resolution of a *bona fide* dispute,

---

[1]    The Settlement Agreement is attached hereto as Exhibit A.

Plaintiff respectfully requests that Court enter an order:

1. Granting final approval of the Parties' Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2. Approving the Gross Settlement Amount of $267,000 in resolution of this action, distributed by Defendants in two payments as indicated in the proposed Settlement Agreement.

3. Approving Plaintiff's unopposed request for attorneys' fees and costs, in the amount of $29,000, or approximately 11% of the Gross Settlement Amount.

4. Dismissing this action with prejudice upon Court approval of the settlement and submission by Plaintiff of a Stipulation of Dismissal.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit in the United States Eastern District of New York Court on September 28, 2023, alleging that Defendants failed to properly compensate Plaintiff pursuant to the Fair Labor Standards Act and the New York Labor Law. Specifically, Plaintiff alleged that Defendants failed to pay minimum and overtime wages, in violation of 29 U.S.C. § 206 *et seq.,* and N.Y.L.L. § 650 *et seq.* (Counts 1-4) ; failed to pay him on a weekly basis, in violation of N.Y.L.L. § 191 (1)(a)(i) (Count 5); and failed to provide him wage notices and statements, in violation of N.Y.L.L. § 195 (1)(a) and (3) *et seq.* (Count 6).  Plaintiff alleged that although he routinely worked in excess of forty (40) hours a week, he was not paid minimum and overtime compensation for hours worked in excess of forty (40) hours per week.

Defendants denies these allegations and maintain that they have, at all times, complied with all relevant state and federal wage laws with respect to Plaintiff and is agreeing to settle this case solely to avoid the additional time and expense of protracted litigation.

Following the filing of Plaintiff's Complaint and up to the most recent settlement conference, the Parties engaged in informal discovery focused on settlement negotiations, which

included document exchanges and depositions, and which illuminated many of the important legal and factual issues comprising this litigation. Gonzalez Decl. ¶16.  Plaintiff utilized this discovery as well as Plaintiff's testimony to calculate potential damages and assess litigation risks. Gonzalez Decl. ¶21. The Parties also engaged in substantial arms' length settlement negotiations. On April 18 and April 29, 2024, the Parties engaged in mediation with Philip Goldstein, which was unsuccessful. Gonzalez Decl. ¶14. On August 14, 2024, a status conference was held at which the Court issued a scheduling order and the Parties agreed to a settlement conference set for November 7, 2024. After limited motion practice regarding the status of discovery pending the conclusion of the settlement conference (Dkt. 25-27), resulting in a status conference on February 4, 2025, the Parties agreed to continue with a settlement conference, subsequently scheduled for March 4, 2025. At this settlement conference, facilitated by Honorable Lara Eshkenazi, the Parties negotiated an agreement in good faith. Gonzalez Decl. ¶15 The Parties subsequently finalized this agreement, resulting in this Motion and attached Settlement Agreement. *Id.* Plaintiff has reviewed and executed the Settlement Agreement.[2]

## II.      <u>TERMS OF THE SETTLEMENT AGREEMENT</u>

The Settlement Agreement provides for a Gross Settlement amount of $267,000. Settlement Agreement ¶ 4. The Gross Settlement Amount includes sums to cover attorneys' fees and all costs, totaling $29,000, or approximately 11% of the gross settlement amount. *Id*. The Gross Settlement Amount would result in the recovery of approximately between 72% and 100% of the unpaid minimum and overtime wages alleged in his Complaint. Gonzalez Decl. ¶21.

Upon the execution of this Settlement Agreement, Defendants shall make payments of the

---

[2]      Attached Exhibit A (the Settlement Agreement) includes the signature pages collected to date.

Gross Settlement Amount in two equal installments.  The first installment will be within ten (10) days of the execution of the Settlement Agreement, and the second no later than six months after the first payment.  Settlement Agreement ¶4.

In exchange for this consideration, the Parties agree to a mutual general release of claims. Specifically, Defendants release Plaintiff from,

> all claims, debts, obligations or liability whatsoever, whether arising in law or equity, whether known or unknown, that they have or may have against Plaintiff, as of the date of execution of this Agreement, including, but not limited to, release of all rent, fees, use or occupancy, and any claims in connection with the apartment or apartments Plaintiff resides in or resided in during and after his employment with any of the Defendants or Releasees.

Settlement Agreement ¶7. Plaintiff agrees to a more limited release of Defendants and associated entities and individuals acting on behalf of or in privity with Defendants[3], specifically:

> all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, charges, complaints, appeals and demands, of any nature whatsoever, in law or equity, whether known or unknown, asserted or unasserted, which Plaintiff has, had or may have had against Defendants and Releasees, jointly, severally or singly, in both their individual and representative or official capacities, based on any conduct occurring from the beginning of time through and including the date of Plaintiff's execution of this Agreement, including, without limitation, any claims pertaining to Plaintiff's employment by any Defendant or any Releasee or his presence at the Property, or any premises owned or managed by any of the Defendants, expressly including any claim concerning wages, hours worked, wage payments, and records related to such wages and hours, including any attorneys' fees or costs associated with such claims, under federal, state, or local law or regulation, including, but not limited to, the Fair Labor Standards Act and the New York Labor Law.

Settlement Agreement ¶1(f).

---

[3] The Settlement Agreement defines the individuals and entities that Plaintiff would release as "releasees," defined as,

> "each of the Defendants named in this Lawsuit, Lenox Holding LLC, EDBRAR Associates LLC, Hudson Mgmt LLC, Halby LLC, and each of their respective direct and indirect parent companies and their subsidiaries, divisions, current and former owners, equity holders, officers, board members, directors, principals, shareholders, trustees, administrators, executors, agents, attorneys, employees, former employees, insurers, reinsurers, predecessors, successors and assigns, and their administrators and fiduciaries. "Releasees" includes the immediate family members and each predecessor, successor, and assign of each of the people and entities mentioned in this Paragraph." Settlement Agreement ¶1(e).

4

The Parties also agree to a limited and mutual non-disparagement clause, Settlement Agreement ¶13, with a carve-out for truthful statements, disclosures protected under the NLRA, and participation in other litigation and official inquiries, ¶13(b).

Plaintiff also agrees to a limited confidentiality agreement with regards to (1) private, and proprietary information he learned throughout his employment, Settlement Agreement ¶12(a); and (2) negotiation communications giving rise to the Settlement Agreement and the specific terms of the Agreement, ¶12(c). This confidentiality agreement is subject to the same carve-out for truthful statements, disclosures protected under the NLRA, and participation in other litigation and official inquiries. ¶12(f).

Plaintiff further agrees not to return to 425 East 26th Street, Brooklyn, NY, 11226, where he worked for Defendants and lived, nor to contact (1) Defendants; (2) members of that building's Co-Op board; nor (3) any residents of the building or employees of Defendants, except those individuals that were already friends or family upon execution of the Settlement Agreement. Settlement Agreement ¶11.

## III.    <u>ARGUMENT</u>

As discussed below, because the Settlement Agreement reached by the Parties represents a reasonable compromise over contested issues, it should be approved, and this action should be dismissed via the annexed Stipulation and Order of Final Dismissal with Prejudice pursuant to Federal Rule of Civil Procedure 41.

### A.    **Standard for Settlement Approval and Dismissal under the FLSA.**

To dismiss a FLSA case, using Federal Rule of Civil Procedure 41, the parties must seek Court approval of the settlement. *See Cheeks v. Freeport Pancake House, Inc*., 769 F.3d 199, 206 (2d Cir. 2015). "Generally, if the proposed settlement reflects a reasonable compromise over

contested issues, the settlement should be approved by the reviewing court." *Ceesae v. TT's Car Wash Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) report and recommendation adopted by 2018 WL 741396 (Feb. 7, 2018). To determine the reasonableness of a settlement agreement and grant approval, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted) ("Wolinsky Factors").

The Court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *adopted*, 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). Finally, any award of attorney's fees provided for in the settlement agreement must be determined to be reasonable. *See Ceesae*, 2018 WL 1767866 at *2 (noting that in such circumstances Courts must determine "the reasonableness of any attorney's fees included in the proposed settlement" (citing 29 U.S.C. § 216(b)).

### B.    This Settlement Satisfies the Settlement-Approval Factors

6

Plaintiff's recovery is fair and reasonable given the range of possible recovery and the risks to which further litigation would expose Plaintiff. First, the Settlement Agreement provides a significant recovery for Plaintiff. Plaintiff alleged that, excluding attorneys' fees and costs, his total possible damages recovery was between $611,548.22 and $847,546.85, depending on the methodology used, and including liquidated damages and interest. Via this Settlement Agreement, minus attorneys' fees and costs, Plaintiff will recover $238,000. Therefore, his recovery via this Settlement Agreement comprises between 28%-39% of his total possible recovery assuming complete victory in all of his claims. Moreover, Plaintiff's alleged unpaid wages, consisting of minimum and overtime wages, total between $238,078.05 and $331,480.53; therefore his recovery would consist of between 72% and 100% of his alleged unpaid wages. Gonzalez Decl. ¶21.

Second, the parties are entering into this settlement and foregoing litigation over disputed issues of law and fact to resolve this matter early and cost-effectively. Plaintiff is willing to resolve his claims for less than he might receive at trial because he will receive a guaranteed payment now. This will avoid the uncertainty and delays of protracted motion practice and full-blown litigation. *Id.* ¶17-18.

Third, this settlement resolves contested issues of both law and fact that would expose Plaintiff to significant litigation risks and the possibility of reduced or even no recovery. *Id.* Most significantly, the settlement payment here is fair given the factual and legal disputes that exist regarding (1) the number of hours Plaintiff worked; (2) the number of those hours which are legally compensable; (3) whether and to what extent Defendants' payments to Plaintiff via separate invoiced reduce their wage obligations; (4) the accuracy of Defendants' records; (5) whether Defendants constitute a joint employer and whether they are each joint and severally

liable; and (6) the proper method of calculating Plaintiff's alleged unpaid wages. *Id.* ¶18. Plaintiff further acknowledges other risks in continuing to litigate this matter, including: the risk of an adverse finding, the substantial delay of payment pending litigation, the and delay of a potential appeal.

Lastly, approval of this settlement is supported under the fourth and fifth factors. Specifically, the proposed settlement is also fair and reasonable because Plaintiff was represented by competent and experienced counsel throughout the pre-suit, litigation, and settlement process. *Id.* ¶4-10; 24-33; Further, the Settlement Agreement was the product of a settlement conference facilitated by Honorable Lara Eshkenazi, further raising the presumption the proposed settlement is procedurally fair. *See McLaughlin v. IDT Energy*, No. 14 Civ. 4107, 2018 WL 3642627, at *10 (E.D.N.Y. July 30, 2018) ("A number of courts have suggested that the involvement of an experienced mediator in crafting a settlement indicates that the negotiations leading to the settlement were procedurally fair." (collecting cases)). Plaintiff was also actively engaged in all stages of this litigation, including all of the mediations and the settlement conference, as well as attending one of the depositions. Gonzalez Decl. ¶23.

For these reasons, Plaintiff's counsel believes this settlement should be approved.

### C.    The Settlement Does Not Run Afoul of the *Cheeks* Admonitions.

The Parties' counsel drafted the Settlement Agreement to remain consistent with the *Cheeks* admonitions. *See Gonzales,* 2015 WL 6550560, at *1; *see also Ceesae* v. TT's Car Wash Corp., No. 17 Civ. 291, 2018 WL 741396, at *3 (E.D.N.Y. Feb. 7, 2018) (Ross, J.) (noting "problematic settlement characteristics" that may preclude approval). As discussed below, the three critical provisions of this Settlement Agreement—release, confidentiality, and mutual non-disparagement—were each the product of extensive bargaining between the Parties' counsel and promote benefits that apply to Plaintiff and Defendants alike, *see* Gonzalez Decl. ¶16-20, while

ensuring that the broad remedial concerns of the FLSA are adequately protected.

First, with regards to the mutual releases, the circumstances of the Parties' dispute and the nature of these specific mutual releases are consistent with *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016), *Strauss v. Little Fish Corporation*, No. 19-cv-10158, 2020 WL 4041511, at *5 (S.D.N.Y. Jul. 17, 2020) and the many cases following both, including recent EDNY cases, such as *Lira-Flores v. Rancho Cibaeno Restaurant Corp.*, No. 20-cv-5354-CLP, 2021 WL 11712920 (E.D.N.Y. Oct. 25, 2021). Given the rancorous nature of the Parties' relationship, mutual allegations of inappropriate behavior, a protracted eviction case against Plaintiff involving holdover claims by Defendants, a heavily litigated related workers' compensation claim, and a related administrative discrimination action against Defendants by Plaintiff, Gonzalez Decl. ¶22, the proposed mutual releases would, as in *Strauss*, "operate[] as a walk away provision: [they] permit[] each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit." 2020 WL 4041511, at *5.

Indeed, the release provision is truly mutual and not the product of unequal bargaining power. After all, Defendants' release of Plaintiff arguably even broader than Plaintiff's release of Defendants, as there are fewer carve-outs or limitations applicable to Defendants' releases. Moreover, the releases have been part of the parties' negotiations during the settlement conference and have been negotiated at arm's length by able counsel in the presence of this Court. Settlement Agreement ¶7. The parties' relationship has truly concluded, with Plaintiff's employment ending in 2021 and his residence at the property concluding in 2024. Moreover, Plaintiff himself benefits from the generality of the mutual releases, as he receives assurance that Defendants will not assert claims against him with respect to his presence at the property during the three years that he resided

there following his termination. The provision also binds only those individuals acting on behalf of Defendants or in privity with them and only regarding claims arising from actions taken in that capacity. Settlement Agreement ¶6(b). Finally, this is a single plaintiff claim, and the releases do not bind any other individuals who were not part of the negotiations[4].

Second, the confidentiality and non-disparagement provisions are narrowly tailored so as to not run afoul of the broad remedial purposes of the FLSA, while responding to the reasonable concerns of the Parties with respect to the dissemination of information that could harm the Parties' reputations or reveal Defendants' proprietary business information. Pursuant the confidentiality agreement, Plaintiff would agree to refrain from divulging

> (1) information about the operations and entities or persons related to or affiliated with Defendants or Releasees that is not generally known to the public, and that was disclosed to Plaintiff or known by Plaintiff as a consequence of his employment; and
> (2) the verbal negotiations, whether written or verbal, which gave rise to this Agreement, and the specific terms of this Agreement, including the payment amount.

Settlement Agreement ¶12. However, the Settlement Agreement is clear that this provision does not apply to

> truthful statements regarding Plaintiff's experiences in the litigation of this Action, to the underlying facts and circumstances relating to any claim, the factual foundation of which involves discrimination, in violation of laws prohibiting discrimination, or to disclosures protected under the NLRA that Plaintiff makes on behalf of himself or any other current or former employees of Defendants and Releasees regarding terms and conditions of Plaintiff's or other employees' employment with Defendants or the Releasees.

Settlement Agreement ¶12(f). Moreover, the Settlement Agreement is clear that this provision does

---

[4] Worst possible case, the Agreement includes a "blue pencil" provision in Paragraph 24 of the Settlement Agreement, permitting the Court to "interpret or modify all […] provisions to be enforceable," and the Parties have likewise agreed in Paragraph 15 to "cooperate in re-negotiating and seeking the court's approval" of revised language, in the very unlikely event that the Court might reject the terms as unfair.

not prohibit or restrict Plaintiff from "responding to any inquiry, or providing testimony, about this Agreement or the underlying Action by or before any federal or state administrative or regulatory agency or authority." *Id.* ¶12(g).

Similarly, the Mutual Non-Disparagement provision, ¶13, appropriately balances the remedial concerns of the FLSA with the Parties' mutual desire to prevent reputational damage. Through this provision, both Plaintiff and the Defendants agree to refrain from disparaging the other's reputation. However, similar to the confidentiality clause, ¶13(c) makes clear that the mutual non-disparagement promises do not apply to truthful statements "regarding their experiences in the litigation of this Action, or to the underlying facts and circumstances relating to any claim, the factual foundation of which involves discrimination, in violation of laws prohibiting discrimination."

Therefore, both of these provisions guarantee that Plaintiff will be able to speak publicly about his experiences throughout this litigation and make truthful statements regarding the underlying facts relating to his claims, therefore ensuring that other workers have access to this information. These provisions thus provide that reputational harm does not inhere to the Parties, an agreement that benefits both Plaintiff and Defendants, while ensuring that the broad remedial purposes of the FLSA are not thwarted. Indeed, Plaintiff has already succeeded in broadcasting his experiences via the publication of a March 4, 2025 article in Documented NY, further ensuring that this Settlement Agreement in no way undermines the dissemination of the underlying facts of this case.[5]

Therefore, the Settlement Agreement does not run afoul of the *Cheeks* "admonitions" and should be approved as a fair and reasonable bargain between the Parties.

---

[5] *See* Rommel H. Ojeda, *Supers In NYC Are Underpaid. Is This New York Law To Blame?*, Documented (Mar. 4, 2025), https://documentedny.com/2025/03/04/supers-janitors-porters-law-nyc/ (last visited Mar 21, 2025).

**D.    The Attorney's Fees and Costs Provision of the Settlement Agreement Fairly Compensates Plaintiff's Counsel for the Time and Expense of Litigating This Matter.**

The Settlement Agreement provides for the payment of Plaintiff's attorneys' fees and costs in the amount of $29,000, or approximately 11% of the Gross Settlement Amount. Settlement Agreement ¶ 4. Plaintiff's costs associated with bringing this litigation total $6,101.83, consisting of court reporter fees related to two depositions, and mediator fees. Gonzalez Decl. ¶27. Plaintiff's Counsel will therefore earn $22,898.17, or just 8.5% of the Gross Settlement Amount. Overall, this amount is well below the 20% maximum that Plaintiff's Counsel's retainer with Plaintiff articulated could be taken from Plaintiff's recovery. Gonzalez Decl. ¶35. Moreover, Plaintiff's counsel has collectively spent 283.50 hours advocating on behalf of Plaintiff, for a combined attorneys' fees of $73,650. Gonzalez Decl. ¶26. Thus the requested amount is approximately 40% of the lodestar rate. Therefore, either using the widely accepted "percentage of the fund" method— through which courts have routinely found an award of one-third the settlement amount to be reasonable—or the loadstar method—in which courts multiply the number of hours worked by counsel by a reasonable hourly rate—*see Singh v. Anmol Food Mart, Inc., No. 22-CV-5475 (RER) (JAM), 2025 WL 611121, at \*7-8 (E.D.N.Y. Feb. 26, 2025)*, the requested award of $29,000, or 11% (which, after costs comprise approximately 8.5%), of the Gross Settlement Amount is reasonable and should be approved.

## IV.    <u>CONCLUSION</u>

Because the Settlement reached by the Parties in this case is fair and reasonable, and meets the requirements for FLSA settlement approval, this Court should enter an Order:

1.  Granting final approval of the Parties' Settlement Agreement as a fair and reasonable resolution of a bona fide dispute under the Fair Labor Standards Act.

2. Approving the Gross Settlement Amount of $267,000 in resolution of this action, distributed by Defendants in two payments as indicated in the proposed Settlement Agreement.

3. Approving Plaintiff's unopposed request for attorneys' fees and costs, in the amount of $29,000, or approximately 11% of the Gross Settlement Amount.

4. Dismissing this action with prejudice upon Court approval of the settlement and submission by Plaintiff of a Stipulation of Dismissal.

Dated: March 31, 2025                          Respectfully submitted,

                                               By their attorneys,

                                               /s/Mel Gonzalez
                                               Mel Gonzalez
                                               Elisa Devins
                                               Mel Gonzalez
                                               100 Pearl St 19th Fl
                                               New York, NY 10004
                                               212-659-6141
                                               mgonzalez@nylag.org
                                               edevins@nylag.org

---

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2025, a copy of this document was served by electronic filing on all counsel of record.

                                               /s/ Mel Gonzalez
                                               Mel Gonzalez

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

DIEGO MEJIA,

                   *Plaintiff*,

      -v.-

425 EAST 26TH STREET OWNERS CORP,
JERSEY PROPERTIES LLC, UNITED
MANAGEMENT CORP., ARTHUR WEINER and
MEIR BOUSKILA,

                   *Defendants*.

------------------------------------------------------------------------x

**NEGOTIATED SETTLEMENT
AGREEMENT AND MUTUAL
GENERAL RELEASE**

Case No. 1:23-cv-7259-LDH-LKE

Plaintiff Diego Mejia ("Plaintiff") and defendants 425 East 26th Street Owners Corp. (the "Co-Op"), Jersey Properties LLC ("Jersey Properties"), United Management Corp. ("United"), Arthur Wiener s/h/a "Arthur Weiner" ("Wiener") and Meir Bouskila ("Bouskila," and, collectively with the Co-Op, Jersey Properties, United and Wiener, the "Defendants," and together with Plaintiff, the "Parties") desire to settle and resolve fully all claims that were or could have been asserted between the Parties, and have reached a compromise settlement agreement to dispose of all such claims, including but not limited to, Plaintiff's claims against Defendants in the lawsuit captioned *D. Mejia v. 425 East 26th Street Owners Corp., et al.*, Case No. 1:23-cv-7259-LDH-LKE, pending in the United States District Court for the Eastern District of New York (the "Lawsuit"). Therefore, in consideration of the foregoing, the Parties agree as follows:

**WHEREAS**, Plaintiff was, for a period of time, employed at a residential apartment building located at 425 East 26th Street, Brooklyn, New York (the "Property"), and performed certain work at other worksites, including the two adjacent buildings located at 351 and 355 Fifth Avenue, Brooklyn, New York;

**WHEREAS**, as condition of his employment, Plaintiff was permitted use of an apartment at the Property, Unit 1E (the "Apartment"); and

**WHEREAS**, Plaintiff's employment at the Property was terminated, effective on or about April 19, 2021;

**WHEREAS,** Plaintiff thereafter continued to use and occupy the Apartment following his termination, through August 30, 2024;

**WHEREAS**, Plaintiff retained counsel and, through counsel, asserted claims relating to his employment, including, but not limited to, underpaid overtime wages, liquidated damages, penalties and interest;

**WHEREAS**, after negotiations, the Parties desire to settle and effect a final resolution of all differences between them, including, but in no way limited to, any differences relating to

Plaintiff's employment through its termination on April 19, 2021, and his subsequent use and occupancy of the Apartment through August 30, 2024, the Parties have agreed to enter into this Negotiated Settlement Agreement and Mutual General Release (the "Agreement") as a full, final and complete global resolution of all disputes between them, including both the claims in the Lawsuit and any claims concerning Plaintiff's employment, his presence at Defendants' premises or his use of the Apartment; and

**WHEREAS**, the Parties desire to set forth all of the terms and conditions of their resolution in this Agreement.

**WHEREAS**, the Parties have agreed and consented to the jurisdiction of Lara K. Eshkenazi, United States Magistrate Judge, for purposes of deciding the motion for approval of this settlement under *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), and have agreed to request expedited handling of the motion for settlement approval.

**NOW, THEREFORE**, based upon their mutual promises and other good and valuable consideration, the Parties agree as follows:

1.      **Incorporation of Recital Paragraphs and Additional Definitions.** The statements and definitions contained in the above recital paragraphs are incorporated herein with the same force and effect as if fully set forth herein at length. In addition, the terms set forth below shall have the following definitions:

    (a)      "Effective Date" means the date this Agreement becomes effective, which shall occur when all of the following events have occurred:

        i)      Counsel for Defendants' receipt of this Agreement executed by Plaintiff, including the Agreement's annexed Stipulation and Order of Final Dismissal with Prejudice (the "Stipulation of Dismissal"), which will be held in escrow by Defendants' attorneys pending the receipt of all settlement checks by Plaintiff's Counsel attached hereto as Exhibit "A";

        ii)      Counsel for the Defendants' receipt of IRS Forms W-4 and W-9 executed by Plaintiff;

        iii)      Counsel for the Defendant's receipt of an IRS Form W-9 executed by Plaintiff's Counsel; and

        iv)      Counsel for the Parties' receipt of notice of the Court's approval of this Agreement and its terms (the "Approval Date").

    (b)      "General Release of All Claims by Plaintiff" means the waiver of claims set out in Paragraph "6" of this Agreement.

    (c)      "General Release of All Claims by Defendants" means the waiver of claims set out in Paragraph "7" of this Agreement.

    (d)    "Paragraph" means a paragraph of this Agreement, unless otherwise specified.

    (e)    "Releasees" means each of the Defendants named in this Lawsuit, Lenox Holding LLC, EDBRAR Associates LLC, Hudson Mgmt LLC, Halby LLC, and each of their respective direct and indirect parent companies and their subsidiaries, divisions, current and former owners, equity holders, officers, board members, directors, principals, shareholders, trustees, administrators, executors, agents, attorneys, employees, former employees, insurers, reinsurers, predecessors, successors and assigns, and their administrators and fiduciaries. "Releasees" includes the immediate family members and each predecessor, successor, and assign of each of the people and entities mentioned in this Paragraph.

    (f)    "Released Claims" means any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, charges, complaints, appeals and demands, of any nature whatsoever, in law or equity, whether known or unknown, asserted or unasserted, which Plaintiff has, had or may have had against Defendants and Releasees, jointly, severally or singly, in both their individual and representative or official capacities, based on any conduct occurring from the beginning of time through and including the date of Plaintiff's execution of this Agreement, including, without limitation, any claims pertaining to Plaintiff's employment by any Defendant or any Releasee or his presence at the Property, or any premises owned or managed by any of the Defendants, expressly including any claim concerning wages, hours worked, wage payments, and records related to such wages and hours, including any attorneys' fees or costs associated with such claims, under federal, state, or local law or regulation, including, but not limited to, the Fair Labor Standards Act and the New York Labor Law.

    **2.**    **Termination of Employment.** Plaintiff acknowledges that his employment at the Property and with any of the Defendants ended effective April 19, 2021.

    **3.**    **No Admission of Wrongdoing.** The Parties agree that neither this Agreement, nor the furnishing of the consideration for this Agreement, nor otherwise complying with its terms, shall be deemed or construed at any time for any purpose as an admission by any of the Parties or the Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

    **4.**    **Consideration; No Other Payments.** In consideration for Plaintiff's timely executing this Agreement and complying with the promises made by Plaintiff contained in this Agreement, including the releases and waivers of claims set forth herein, Defendants agree to provide Plaintiff with the total settlement sum of Two Hundred and Sixty-Seven Thousand Dollars and No Cents ($267,000.00) in consideration for and in full satisfaction of all claims Plaintiff may have against Releasees, known or unknown, asserted or unasserted, through the date of his execution of the Agreement. Such payments shall be allocated and delivered as follows:

(a)   Within ten (10) business days of the Effective Date (the "Initial Payment Date"), Defendants shall deliver or cause to be delivered payment as follows:

    i)   Defendants shall issue a payroll check made payable to "Diego Mejia" in the gross amount of Forty-Four Thousand, Five Hundred Dollars and No Cents ($44,500.00), less all legally required deductions, payroll taxes and withholdings, which will be itemized along with the check, for which Defendants shall issue an IRS Form W-2 for calendar year 2025;

    ii)   Defendants shall issue a check made payable to "Diego Mejia" in the total amount of Sixty Thousand Dollars and No Cents ($60,000.00), without withholdings, for which Defendants shall issue an IRS Form 1099 (Box 3) for calendar year 2025;

    iii)   Defendants shall issue a check made payable to "New York Legal Assistance Group" in the total amount of Twenty-Nine Thousand Dollars and No Cents ($29,000.00), without withholdings, as attorneys' fees and costs, for which Defendants shall issue an IRS Form 1099 (Box 10) for calendar year 2025;

(b)   Within six (6) months after the Initial Payment Date (as defined herein), Defendants shall issue or cause to be issued checks as follows (the "Final Payment"):

    i)   Defendants shall issue a payroll check made payable to "Diego Mejia" in the gross amount of Forty-Four Thousand, Five Hundred Dollars and No Cents ($44,500.00), less all legally required deductions, payroll taxes and withholdings, which will be itemized along with the check, for which Defendants shall issue an IRS Form W-2 for calendar year 2025;

    ii)   Defendants shall issue a check made payable to "Diego Mejia" in the total amount of Eighty-Nine Thousand Dollars and No Cents ($89,000.00), without withholdings, for which Defendants shall issue an IRS Form 1099 (Box 3) for calendar year 2025;

(c)   All payments set forth in Paragraphs "4(a) – (b)" above will be sent to Plaintiff's Counsel of record, New York Legal Assistance Group, attn: Mel Gonzalez, Esq., 100 Pearl Street, 19th Floor, New York, NY 10004. Defendants shall deliver these payments by trackable delivery method, such as FedEx, UPS, or USPS express.

(d)   **Notice of Default and Right to Cure.** In the event that any payment due as set forth in Paragraphs "4(a) – (b)" above is not received by the close of business on the final date set forth herein for such payment, or, provided that the payment date falls on a weekend or holiday, before the close of

business on the next following business day, Plaintiff's Counsel shall serve a written notice ("Notice of Default") upon counsel for Defendants as set forth herein, and Defendants shall have ten (10) business days from counsel's receipt of same to cure the default by making such payment.

(e)  **Indemnification.** Plaintiff shall be solely responsible for the payment of all local, state and federal taxes, interest, penalties and other liabilities or costs that may be assessed in connection with the settlement sum set forth in Paragraph "4" and its subparts above. Plaintiff further agrees to indemnify and hold Defendants harmless against the payment of any such taxes, interest, penalties and other liabilities or costs that may be assessed by the Internal Revenue Service, or any other taxing authority and/or any other governmental agency (whether federal, state, or local), in connection with such settlement sum, including but not limited to any failure by Plaintiff to report to the proper taxing authorities, or any failure by Plaintiff to pay income taxes on, the payments described in this Paragraph "4" and its subparts above, and/or any prior payment received from Defendants, provided that Defendants, and not Plaintiff, are responsible for any tax liabilities, payments, costs, interest and penalties concerning the employer's portion of any tax withholding obligations. Plaintiff acknowledges that he has not relied on any oral or other representations made by Defendants or their counsel regarding the tax consequences of any of the amounts paid pursuant to this Agreement. Plaintiff further acknowledges and agrees that neither Defendants nor counsel for Defendants, have provided any advice whatsoever on the taxability of the foregoing settlement payments to Plaintiff.

5.  **No Consideration Absent Execution of this Agreement.** Plaintiff understands and agrees that Plaintiff would not receive the monies specified in Paragraph "4" or its subparts above, except for Plaintiff's execution of this Agreement and the fulfillment of the promises contained herein.

6.  **Plaintiff's General Release of Claims.**

(a)  Plaintiff, his heirs, executors, administrators, successors and assigns voluntarily releases and forever discharges Releasees of and from of and from the Released Claims, based upon any conduct occurring from the beginning of time up to and including the date of Plaintiff's execution of this Agreement.

(b)  The release and waiver of claims as against the Releasees described in Paragraph "6(a)" extends only to persons or entities acting on behalf of or in privity with Defendants themselves, and as to such persons or entities, is limited only to claims arising from actions taken in their capacity as such.

(c)  Plaintiff is not waiving the right to vested benefits under the written terms of any pension or welfare benefit plan, if any, claims for unemployment or

workers' compensation benefits, any medical claim or any judgment or monetary awards or settlements that may arise related to medical benefits under any benefit plan sponsored by Defendants, claims arising after the date on which Plaintiff signs this Agreement, or claims that are not otherwise waivable under applicable law.

(d)     Plaintiff agrees that upon the distribution of the Final Payment pursuant to Paragraph "44(b)," he will, within ten (10) business days, seek and obtain the dismissal of the Lawsuit (including, but not limited to, by returning to Defendants' counsel the executed Stipulation and Order of Final Dismissal with Prejudice attached to this Agreement as Exhibit "A"), and any other complaint, lawsuit, action, cause of action, administrative charge, claim, controversy, demand, grievance or proceeding (unless such proceeding is a class action in which case Plaintiff agrees to "opt out" of the class and not to participate in the class action) against the Releasees as to any of the Released Claims. It is acknowledged and understood by Plaintiff that any and all of Defendants' obligations set forth in this Agreement are conditioned completely and entirely upon the withdrawal and dismissal of any and all such agency, administrative, city, state and federal court investigations, proceedings and actions, including but not limited to the Lawsuit.

(e)     In the event that, for any reason, any complaint, lawsuit, action, cause of action, administrative charge, claim, controversy, demand, grievance or proceeding covered by this Paragraph "6" is or remains pending or is instituted on his behalf, Plaintiff agrees: (i) to ask each agency or court with which any such matter is instituted and/or pending to enter an order, without appearance by either party, fully and finally withdrawing the matter and dismissing it with prejudice, and any such orders shall be attached to and become a part of this Agreement; (ii) to not, unless required by law to do so (and then subject to the terms of this paragraph), participate or request others to participate on his behalf in any such proceeding or litigation arising therefrom or associated therewith; and (iii) in no event, from any such source or proceeding whatsoever, to seek or in any way to obtain or accept any monetary award, recovery, settlement or relief therefrom. Provided, however, that nothing set forth in this article and/or otherwise in this Agreement shall in any way limit, restrict, impair or otherwise restrict Plaintiff from enforcing this Agreement, including, but not limited to, filing court and/or other legal proceedings to enforce Defendants' payment obligations set forth hereinabove.

(f)     The Parties intend that the Release in this Paragraph "6" and its subparts shall be as broad as possible and shall apply to all claims relating to or arising from Plaintiff's employment or presence at the Property, or presence at any premises owned or managed by any of the Defendants, not specifically excepted in Paragraph "8" of this Agreement, to the greatest extent permitted by applicable law.

7.    **General Release of All Claims by Defendants.** In consideration for Plaintiff's timely signing this Agreement and complying with the promises made by Plaintiff contained in this Agreement, including the releases and waivers of claims, to which Defendants are not otherwise entitled, to the greatest extent permitted under applicable law, Defendants knowingly and voluntarily release and forever discharge Plaintiff of and from any and all claims, debts, obligations or liability whatsoever, whether arising in law or equity, whether known or unknown, that they have or may have against Plaintiff, as of the date of execution of this Agreement, including, but not limited to, release of all rent, fees, use or occupancy, and any claims in connection with the apartment or apartments Plaintiff resides in or resided in during and after his employment with any of the Defendants or Releasees.

8.    **Limitations on the Parties' Mutual Releases of Claims.** For the avoidance of doubt, the Releases in Paragraphs "6" and "7" of this Agreement are limited by the following:

(a)    Nothing in this Agreement restricts or prohibits anyone from (i) complying with a lawful subpoena or other legal process, or (ii) initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Plaintiff is waiving his right to receive any individual monetary relief from the Releasees resulting from such claims or conduct, regardless of whether Plaintiff or another party has filed them, and in the event Plaintiff obtain such monetary relief the Releasees will be entitled to an offset for the payments made pursuant to this Agreement. This Agreement does not limit Plaintiff's right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law.

(b)    This Agreement does not release the Parties from their obligations under this Agreement. Any Party may bring a claim for breach of this Agreement. If any Party brings any claim or action for breach of this Agreement or to enforce its respective rights under this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs that they incur in connection therewith, and any other remedies available at law.

9.    **Remedies for a Breach of this Agreement; Releasees are Intended Third-Party Beneficiaries.** The Parties agree that the Releasees are third-party beneficiaries to this Agreement and may enforce their rights under this Agreement. In any action to enforce this Agreement, including a claim of breach by any Party, the prevailing Party shall be entitled to recover its reasonable attorney's fees and costs incurred in such action, in addition to, and not in lieu of, any

legal remedies, monetary damages, or other available relief. In the event of a breach or threatened breach by Plaintiff of any of the provisions of this Agreement, Plaintiff hereby consents and agrees that Defendant and the Releasees shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that money damages would not afford an adequate remedy.

10.    **Medicare Eligibility and Enrollment and Satisfaction of any Medicare Reimbursement Obligations**. Plaintiff represents that (a) he is not enrolled in the Medicare program; and (b) no Medicare payments and/or Conditional Payments have been made to him or on his behalf arising from or related to any Released Matters.

11.    **Plaintiff's Covenant Not to Return to the Property.** Plaintiff acknowledges and agrees that his employment at the Property has ended, and he covenants and agrees not to enter the premises at 425 E 26th Street, Brooklyn, New York for any reason. Plaintiff further covenants and agrees that he shall refrain from communicating with or otherwise contacting (via mail, telephone, email, text, voicemail, social media, or other means) (1) Defendants; (2) any of the members of the Co-Op Board; and (3) any residents of the Property or employees of Defendants, except Plaintiff's family members and an individual named Arturo.

12.    **Confidentiality.**

(a)    During the course of Plaintiff's employment at the Property, Plaintiff had access to confidential information regarding the Property, the Co-Op's and United Management's operations, and persons and entities affiliated with the Property, the Co-Op and United Management ("Confidential Information"). "Confidential Information" is any and all information about the operations and entities or persons related to or affiliated with Defendants or Releasees that is not generally known to the public, and that was disclosed to Plaintiff or known by Plaintiff as a consequence of his employment. Confidential Information includes, but is not limited to, Defendants' finances, operations, officers, principals, partners, sponsors, shareholders, unit owners, members, tenants, residents, visitors, board members, managing agents, investors, lenders, processes, computer programs, projects, accounts, pricing, business methods, marketing, clients, client funds, investment opportunities, investments, portfolios, internal affairs, legal affairs, safety matters, trade secrets, advertising and operating procedures, potential or existing reorganization plans, business plans, building plans, investors' identities, investors' businesses, investor relationships, investor finances, vendors, contractors, and any and all information entrusted to Defendants or the Releasees by third parties. For the avoidance of doubt, Confidential Information includes information about residents, shareholders, lessees, unit owners, visitors, and guests of any properties managed by Defendants, such as, for example and not by way of limitation, names, addresses, telephone numbers, social media contact information, preferences, habits, and other personal information. Confidential Information may be contained in written materials, electronic

communications, handwritten notes, verbal communications, tape or electronic recordings, the unwritten knowledge of employees of the Employer, and/or any other tangible medium of expression, including, but not limited to, hard disk and soft disk drive mechanisms.

(b)    Upon execution of the Agreement, Plaintiff agrees not to divulge any Confidential Information, except as specifically excepted in this Paragraph and its subparts.

(c)    "Confidential Information" shall also include the verbal negotiations, whether written or verbal, which gave rise to this Agreement, and the specific terms of this Agreement, including the payment amount. This disclosure prohibition excludes Plaintiff's spouse, or domestic partner, legal and tax advisors and clergy, if any, to the extent such individuals have a reasonable need for this information.

(d)    This provision does not preclude Plaintiff from stating that any differences between Defendants, the Releasees and himself have amicably been resolved. Plaintiff further agrees and represents that he shall not affirmatively participate in or contribute to any public discussion, notice or other publicity concerning or in any way related to the transactions or events which are the subject of the Action and/or this Agreement.

(e)    Any breach of this Paragraph shall be a material breach of this Agreement but shall not relieve Plaintiff of any obligations under the Agreement.

(f)    The provisions of this Paragraph do not apply to truthful statements regarding Plaintiff's experiences in the litigation of this Action, to the underlying facts and circumstances relating to any claim, the factual foundation of which involves discrimination, in violation of laws prohibiting discrimination, or to disclosures protected under the NLRA that Plaintiff makes on behalf of himself or any other current or former employees of Defendants and Releasees regarding terms and conditions of Plaintiff's or other employees' employment with Defendants or the Releasees.

(g)    Nothing in this Agreement shall prohibit or restrict Plaintiff from responding to any inquiry, or providing testimony, about this Agreement or the underlying Action by or before any federal or state administrative or regulatory agency or authority.

**13.    Mutual Non-Disparagement.**

(a)    Upon execution of the Agreement, Plaintiff agrees that he and his agents and/or representatives shall refrain from: (1) all conduct, verbal or otherwise, which would materially damage the reputation, goodwill or standing in the communities of Defendants and/or the Releasees, and (2) referring to or in any way commenting on Defendants and/or any of the

Releasees in or through the general media or any public domain (including without limitation, internet websites, blogs, chat rooms, social media and the like), in a way that would materially damage the reputation, goodwill or standing in the communities of the Releasees.

(b)   Upon execution of the Agreement, defendants Wiener and Bouskila, United Management employees Alla Berger and Hugo Barrios, and each member of the Co-Op's board, shall refrain from: (1) all conduct, verbal or otherwise, which would materially damage Plaintiff's reputation, goodwill or standing in the community, and (2) knowingly and intentionally referring to or in any way commenting on Plaintiff in or through the general media or any public domain (including without limitation, internet websites, blogs, chat rooms and the like), in a way that would materially damage Plaintiff's reputation, goodwill or standing in the community.

(c)   The "no disparagement" provisions of this Paragraph "13" do not apply to prevent any Party from making truthful statements regarding their experiences in the litigation of this Action, or to the underlying facts and circumstances relating to any claim, the factual foundation of which involves discrimination, in violation of laws prohibiting discrimination.

14.   **Acknowledgments and Affirmations.**

(a)   He has carefully read, and understands, this Agreement;

(b)   He has been given a reasonable time to consider his rights and obligations under this Agreement;

(c)   He understands that this Agreement is legally binding and by signing it he gives up certain rights;

(d)   He is of sound mind and under no constraint or undue influence, has not been forced or pressured in any way to sign this Agreement, and has knowingly and voluntarily chosen to enter into this Agreement;

(e)   He has not relied upon any representation, statement or omission made by any Defendant or any Releasee, or any of the Defendant's or the Releasees' agents, attorneys or representatives with regard to the subject matter, basis or effect of this Agreement or otherwise, other than those expressly stated in this Agreement;

(f)   Plaintiff affirms that in the Lawsuit he has asserted a claim seeking unpaid wage or overtime pay under the Fair Labor Standards Act, the New York State Labor Law, and/or any other law, regulation or basis, and affirm that there is a *bona fide* dispute as to such FLSA claims which are being settled and released by this Agreement. Plaintiff believes that this settlement is fair and reasonable, and authorizes his attorney to seek from the Court approval

- 10 -

of the settlement as fair and reasonable under the FLSA, and dismissal of the Lawsuit with prejudice;

(g)    The payments provided for above are in full discharge of any and all of Defendants' alleged liabilities and obligations to Plaintiff, including, but not limited to the claims asserted in the Lawsuit;

(h)    The payments provided for above are in full discharge of any and all alleged claims against Defendants for damages of any kind;

(i)    Except as to any amounts which might be vested and come due under employee benefit plans governed by ERISA or non-qualified deferred compensation, or under the terms of any insurance policies, if any, which may remain in effect for Plaintiff, Defendants do not owe Plaintiff any further compensation, overtime compensation, bonus, incentive compensation, accrued vacation pay or monies of any kind; and

(j)    The payments provided for above fully and completely settle all claims by Plaintiff and Plaintiff's counsel against Releasees for attorneys' fees, costs, disbursements and the like.

(k)    Plaintiff acknowledges and agrees that (i) he is represented by Mel Gonzalez, Esq. and New York Legal Assistance Group, (ii) he is satisfied with Mr. Gonzalez's representation of him in this matter, and (iii) Mr. Gonzalez used his best efforts to pursue and resolve the disputes between Plaintiff and the Releasees in a manner that is fair to Plaintiff's interests.

(l)    Plaintiff also represents and agrees that he discussed all aspects of his claims and allegations and this Agreement with his counsel, has been fully advised by their counsel as to his rights, understands that he is waiving significant legal rights by signing this Agreement, and enters into this Agreement voluntarily, with the full understanding of the Agreement and all of its terms.

**15.    Further Procedure.** After this Agreement and the Stipulation of Dismissal are fully-executed by the Parties and their counsel, subject to Defendants' review of and consent to the motion for judicial approval of the settlement, Plaintiff will submit the Agreement and Stipulation to the Court on behalf of the Parties for the Court's consideration and approval. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. The Court's approval of all provisions of this Agreement is a material term of this Agreement. In the event that the Court does not approve this Agreement, the Parties jointly agree to cooperate in re-negotiating and seeking the Court's approval of an enforceable written settlement agreement that honors the Parties' agreement in principle as set forth herein.

**16.    Notices.** All notices and other communications related to this Agreement shall be in writing and shall be given by email and hand delivery to the other party or by registered or

certified mail, return receipt requested, postage prepaid, overnight courier (such as Federal Express, UPS or USPS). Unless another address is provided to the other Party in writing, notice shall be given:

**To Plaintiff:**
c/o Mel Gonzalez
New York Legal Assistance Group
100 Pearl Street, 19th Floor
New York, NY 10004
mgonzalez@nylag.org

**To Defendants:**
c/o Stephen P. Pischl
Clifton Budd & DeMaria, LLP
350 Fifth Avenue, 61st Fl
New York, NY 10118
sppischl@cbdm.com

17. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, any party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

18. **Amendment.** This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

19. **Completed Integrated Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Plaintiff acknowledges that he has not relied on any representations, promises, or agreements of any kind made to him in connection with his decision to accept this Agreement, except for those set forth in this Agreement.

20. **Section Headings.** Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

21. **Legal Fees.** Except as provided for in this Agreement, each party will be responsible for its own legal fees or costs, if any, incurred in connection with the negotiation, settlement and delivery of this Agreement.

22. **Counterparts.** This Agreement may be executed in counterparts with all counterparts constituting the entire Agreement and with the same full force and effect as if this Agreement were not executed in counterparts. Electronic and facsimile signatures shall be deemed as originals.

23. **Joint Participation in Preparation of Agreement.** The Parties participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

24.    **Severability and Modification.** If any provision of this Agreement is declared illegal or unenforceable by this Court, Plaintiff and Defendants agree that this Court has the full discretion to interpret or modify all such provisions to be enforceable and is directed to do so.

25.    **Competency to Waive Claims.** At the time of considering or executing this Agreement, Plaintiff is not affected or impaired by illness, use of alcohol, drugs or other substances or otherwise impaired. Plaintiff is competent to execute this Agreement.

26.    **Translation into Spanish**. Plaintiff represents that Spanish is his primary language and he understands it better than English. He also represents that he, or his counsel, have had each and every term of this Agreement translated into Spanish for him.

El demandante declara que el español es su idioma principal y lo entiende mejor que el inglés. También el declara que el, o su abogado, han traducido al español todos y cada uno de los términos de este Acuerdo.

[*Remainder of Page Intentionally Left Blank*; *Signatures Follow*.]

- 13 -

**PLEASE READ CAREFULLY. THIS AGREEMENT IS A LEGAL DOCUMENT AND INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AS SET FORTH HEREIN, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL CLAIMS ARISING UNDER ALL FEDERAL, STATE AND/OR LOCAL LAWS.**

**BY SIGNING THIS AGREEMENT, PLAINTIFF ACKNOWLEDGES AND AFFIRMS THAT HE IS COMPETENT TO ENTER INTO THIS AGREEMENT, THAT HE HAS READ AND UNDERSTAND AND ACCEPTS THAT THE RELEASE HEREIN WILL FULLY AND FINALLY WAIVE AND RELEASE THE RELEASED CLAIMS, THAT NO REPRESENTATIONS, PROMISES OR INDUCEMENTS HAVE BEEN MADE TO HIM EXCEPT AS SET FORTH IN THIS AGREEMENT, THAT THIS AGREEMENT IS WRITTEN IN A MANNER AND A LANGUAGE THAT IS UNDERSTANDABLE TO HIM, AND THAT HE HAS SIGNED THIS AGREEMENT FREELY AND VOLUNTARILY, INTENDING TO BE LEGALLY BOUND BY ITS TERMS, WITHOUT ANY DURESS OR COERCION, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.**

     **IN WITNESS WHEREOF**, the parties hereto knowingly and voluntarily executed this Negotiated Settlement Agreement and Limited Release as of the date set forth below:

Dated:    _____, New York       **SIGNED AND AGREED TO BY:**
       March _____, 2025

                                  _____
                                  **DIEGO MEJIA**

STATE OF NEW YORK     )
                        ) ss.:
COUNTY OF            )

On March _____, 2025, before me appeared Diego Mejia, known to me to be the individual whose name is subscribed therein, and executed the foregoing Negotiated Settlement Agreement and Mutual General Release (the "Agreement"), and duly acknowledged to me that he executed the same.

                                  _____
                                  Notary Public

*[Remainder of Page Intentionally Left Blank]*

Dated: _____, New York  **425 EAST 26TH STREET OWNERS CORP.**
March _____, 2025

By: _____
     Name:
     Title:

Dated: _____, New York  **JERSEY PROPERTIES LLC**
March _____, 2025

By: _____
     Name:
     Title:

Dated: _____, New York  **UNITED MANAGEMENT CORP.**
Mach _____, 2025

By: _____
     Name:
     Title:

Dated: _____, New York  **MEIR BOUSKILA**
March _____, 2025

_____

Dated: _____, New York  **ARTHUR WIENER**
March _____, 2025

_____

EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DIEGO MEJIA,

                 *Plaintiff,*

      -v.-

425 EAST 26TH STREET OWNERS CORP,
JERSEY PROPERTIES LLC, UNITED
MANAGEMENT CORP., ARTHUR WEINER and
MEIR BOUSKILA,

                *Defendants.*
------------------------------------------------------------------------x

**STIPULATION AND ORDER
OF FINAL DISMISSAL WITH
PREJUDICE**

Case No. 1:23-cv-7259-LDH-LKE

       **IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned attorneys of record for the parties to the above-entitled action, that the Negotiated Settlement Agreement and Mutual General Release in this matter having been reviewed by the Court and found to be fair and reasonable, that the above-captioned action and all claims and counterclaims therein shall be dismissed in its entirety, with prejudice, in accordance with the terms of the Negotiated Settlement Agreement and Mutual General Release.

       **IT IS FURTHER STIPULATED AND AGREED** that this Stipulation may be executed in counterparts, and that a facsimile or electronic signature on this Stipulation shall have the same force and effect as an original signature.

NEW YORK LEGAL ASSISTANCE GROUP
*Attorneys for Plaintiff*

  By: _____
      Mel Gonzalez, Esq.
      100 Pearl Street, 19th Floor
      New York, NY 10004
      (386) 214-6405 (tel.)
      mgonzalez@nylag.org

  Dated:  New York, New York
         _____, 2025

CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Defendants*

  By: _____
      Stephen P. Pischl, Esq.
      350 Fifth Avenue, 61st Floor
      New York, New York 10118
      (212) 687-7410 (tel.)
      sppischl@cbdm.com

  Dated:  New York, New York
         _____, 2025

SO ORDERED on this _____ day of _____, 20_____.

_____
Hon. Lara K. Eshkenazi
United States Magistrate Judge