UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DIEGO MEJIA,

                    *Plaintiff*,

    -v.-

425 EAST 26TH STREET OWNERS CORP,
JERSEY PROPERTIES LLC, UNITED
MANAGEMENT CORP., ARTHUR WEINER and
MEIR BOUSKILA,

                    *Defendants.*
------------------------------------------------------------------------x

Case No. 1:23-cv-7259-LDH-LKE

## DECLARATION OF MEL GONZALEZ

I, Mel Gonzalez, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the following is true and correct:

    1.    I am duly licensed and admitted to practice as an attorney in New York State and the Eastern District of New York.

    2.    I am the lead attorney primarily responsible for the prosecution of this matter on behalf of the Plaintiff.

    3.    I respectfully submit this declaration in support of Plaintiffs' Unopposed Motion for Approval of FLSA Settlement Agreement in the above-captioned action. The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify thereto.

### My Background and Experience

    4.    I received a Juris Doctor degree from the University of California at Berkeley in 2017, and am a graduate of the University of Chicago and the University of Illinois at Chicago. I was admitted to the bar of the State of New York in 2019 and subsequently to the United States

District Court for the Eastern District of New York in 2024. I am a member of good standing in each of these bars.

5. Since February 2024, I have been the director of the Employment Law Project ("ELP") at the New York Legal Assistance Group ("NYLAG"), a non-profit legal services organizations that has provided legal representation to low-wage and immigrant individuals for free or at low cost since 1990. For decades, NYLAG has been involved in thousands of cases on behalf of indigent individuals across New York City and state, in a variety of legal areas such as immigration, housing, and workers' rights.[1] ELP in particular provides client-centered community-based legal advocacy for low-wage and immigrant workers facing exploitative labor practices, discrimination and harassment. Through court- and agency-based litigation, fierce negotiation, public education, policy advocacy and strong community partnerships, ELP strives to build the power of working-class communities across the city.

6. Since graduating from the University of California at Berkeley, all of my legal professional experience has involved workers' rights advocacy. Before joining ELP, I held several positions providing legal services related to workers' rights, wage and hour and discrimination law. Prior to joining NYLAG, I was a litigation associate at Lichten and Liss-Riordan LLC. Lichten and Liss-Riordan is a Boston-based labor and employment firm, with a focus on wage and hour class actions. A number of courts have commented upon the experience of LLR in this area. See, e.g., Scovil v. FedEx Ground Package Sys., Inc., 886 F. Supp. 2d 45, 47 (D. Me. 2012). The firm has pioneered the law on behalf of tipped employees who have been deprived of their gratuities, or the proceeds of service charges, in states throughout the country, including Massachusetts, New York, Florida, Hawaii, and California. It has brought landmark litigation on

---

[1] For an updated tracker of our recent victories, please see https://nylag.org/category/in-the-news/.

behalf of Uber drivers, as well as workers for other so-called "gig economy" companies, and it has established and won numerous cases on behalf of workers who have been misclassified as independent contractors throughout the country, in a wide variety of industries, including the trucking, limo, cleaning, adult entertainment, cable installer, and call center industries. In my capacity as a litigation associate, I was counsel in a variety of individual, group and class-action workers' rights cases across the country leading to the total recovery of millions of dollars in unpaid wage wages. See, e.g. de Assis da Silva v. Voltech Elec., Inc., No. 23-CV-10743-DLC, 2023 WL 11868491, at *1 (D. Mass. Oct. 30, 2023)(approving a settlement agreement in which Plaintiffs recovered 100% of alleged unpaid overtime wages); Ogdon v. Pigeon Freight Services, Inc., No. 1:23CV04458 (N.D. Ill.).

7. Prior to joining Lichten & Liss-Riordan, I worked for a variety of non-profit legal service organizations in New York City, including Takeroot Justice and Make the Road New York. At Make the Road New York, I was an Equal Justice Works fellow. At these organizations, I worked on hundreds of labor, wage and hour and discrimination cases on behalf of low wage and immigrant workers, leading to substantial recovery in the form of damages, policy changes, and workplace improvements for hundreds of workers across New York City. As an Equal Justice Works fellow, I advocated for New York City's restaurant delivery workers to improve working conditions in the traditional and new gig economy through organizing, direct representation, education, and policy reform.

8. I have been featured in various publications, news articles and audio and video-based news outlets, including:

    a. DocumentedNY:

   i. https://documentedny.com/2024/08/14/misinformation-wage-theft-immigrants/

   ii. https://documentedny.com/2024/04/24/brooklyn-migrant-wages-theft-francisco-giro/

b. Gothamist

   i. https://gothamist.com/arts-entertainment/at-least-100-workers-at-nycs-tin-building-lose-jobs-after-employment-authorization-check

c. Streetsblog:

   i. https://nyc.streetsblog.org/2018/07/27/saturdays-pedal-assist-e-bike-legalization-leaves-delivery-workers-out-in-the-cold

d. The Counter:

   i. https://thecounter.org/if-you-want-to-understand-everything-thats-wrong-with-tipping-look-to-new-york/

e. Brooklyn Eagle

   i. https://brooklyneagle.com/articles/2018/05/16/a-tale-of-two-e-bikes-city-moves-ahead-to-help-rich-cyclists-while-thousands-of-deliverymen-suffer/

f. NY1 (Spanish language):

   i. http://www.ny1noticias.com/nyc/noticias/noticias/2018/05/14/demandan-se-deje-de-sancionar-a- repartidores-de-comida-en-e-bikes

g. AMNY:

   i. https://www.amny.com/transit/dockless-bike-share-nyc-1.20113165

h. Huffington Post:

      i. https://www.huffingtonpost.com/entry/how-nycs-electric-bike-crackdown-harms-vulnerable-food- delivery-workers_us_5b453112e4b048036ea381cc

9. I engage in the employment-law bar as a member of the NLG, NELA, and various city, state and national advocacy coalitions oriented around workers' rights, and regularly present know-your-rights trainings across the city for attorneys, organizers, and community advocates.

10. I have published several law review articles:

  a. Mel Gonzalez, Consumer Protection for Criminal Defendants: Regulating Commercial Bail in California, Notes, 106 Calif. L. Rev. [i] (2018).

  b. Alex Kornya et al., Crimsumerism: Combating Consumer Abuses in the Criminal Legal System, 54 Harv. C.R.-C.L. L. Rev. 107 (2019).

11. The attorneys who worked on this matter for NYLAG included Ana-Maria Segura, Elissa Devins, Andrea Ashburn, and Geno Nettle. Maya Adelman Cabral worked on this matter as a paralegal. Of these individuals, only Elissa Devins, Andrea Ashburn and Maya Adelman Cabral currently work at NYLAG. Various interns also worked on this matter included Yael Fisher and Brenda Valladares.

12. I joined this litigation upon starting to work at NYLAG, shortly after the filing of this complaint, as lead attorney. I took primary responsibility for all aspects of this case.

13. I worked closely with the team of attorneys and staff who worked on this matter. Based on my experience with this case, and in working as a workers' rights attorney since 2017, I believe that this is a fair and reasonable resolution of contested issues. While I believe the merits of the case are very strong, the outcome of the litigation is far from certain, and, if not settled, would require significant factual development, and would be subject to the risk that even a

favorable verdict at trial could be delayed based on any appeals by Defendants. The likely risks, complexity, delay and expense of proceeding with litigation are clearly outweighed by the substantial and immediate financial relief presented by this excellent settlement.

**Settlement History**

14. On April 18 and April 29, 2024, the Parties engaged in unsuccessful mediation with Philip Goldstein.

15. On March 4, 2025, the Parties negotiated an agreement in good faith as part of a settlement conference with Honorable Lara Eshkenazi.

**The Proposed Settlement is Fair and Reasonable**

16. Following substantial discovery in the form of document production and depositions, two days of private mediation with Philip Goldstein, substantial negotiations with opposing counsel, and a settlement conference with Honorable Lara Eshkenazi, the Parties have agreed to settle Plaintiff's claims according to the terms of this Settlement Agreement.

17. I believe that the negotiated settlement is fair and reasonable and provides an excellent settlement for Plaintiff with respect to his claims resulting from Defendants' alleged improper wage and hour practices at issue in this case, particularly taking into account disputed legal and factual issues, and the possibility that this case, if not settled now, might not result in any recovery or might result in a recovery less favorable to the Plaintiff.

18. The Settlement Agreement reached by the Parties offers significant advantages over the continued prosecution of this contested case. For example, while Plaintiffs contends that he was not paid for many compensable overtime hours they worked, Defendants vigorously maintain that Plaintiff did not work all of the hours he alleges, and that many of those hours were not legally compensable. Defendants also maintain that any liability should be reduced by payments made to

Plaintiff via separate invoice because that work comprises many of the alleged unpaid hours. Because there are several Defendants, there is significant concern as well regarding whether Defendants will be considered joint employers and whether they are each joint and severally liable.

19.   In addition, while Plaintiff would have sought liquidated damages in an amount equal to their back pay award, Defendants would have argued that it acted in good faith and that liquidated damages were not appropriate.

20.   In sum, the Parties agree that significant legal and factual questions remain with respect to liability and damages under Plaintiffs' theory.

21.   The Gross Settlement Amount of $267,000 in this case provides significant recovery for Plaintiff. The Gross Settlement Amount represents between 72% than 100% of the total unliquidated unpaid wages damages which alleges he could have recovered had he prevailed on his claims in this case.[2] This estimate represents Plaintiffs' detailed calculations of his possible unpaid wages damages using a damages analysis based on Plaintiff's own testimony and payment records provided by Defendants. The Parties dispute the total amount of compensable hours that Plaintiffs worked The Gross Settlement Amount, however, represents between 72% and 100% of Plaintiffs' alleged unliquidated unpaid damages were he to prevail on all of his factual were he eventually successful at trial. The Gross Settlement Amount thus represents a fair compromise between the Parties' competing positions.

---

[2] There are several ways of calculating the wages owed. If we assume that Mr. Mejia was simply paid a very low salary ($446.15) for all of his hours worked, then his regular rate of pay was $4.90 per hour. Using this method, Plaintiff's recovery is 100% of his unpaid wages. Alternatively, courts have also assumed that absent an explicit agreement, an employee's salary is assumed to cover a 40-hour work week, bringing his regular rate of pay to $11.15/hour. Finally, if we assume, as Defendants have urged, that Mr. Mejia's salary was intended to cover only approximately 25 hours of work per week, then his regular rate of pay is higher; but the wages owed, assuming Mr. Mejia's testimony is credited, is substantially higher. See Adams v. Dep't of Juvenile Justice, 143 F.3d 61, 66 (2d Cir. 1998) ("[A]n employee's 'regular rate is computed by dividing the salary by the number of hours which the salary is intended to compensate.'" (quoting 29 C.F.R. § 778.113(a)) (emphasis added). Using this method, Plaintiff's recovery is 72% of his unpaid wages.

22. The mutual releases within the Settlement Agreement are mutual beneficial due to the nature of the relationship between Plaintiff and Defendants. Although for many years, Plaintiff had a good relationship with Defendants, that relationship soured substantially in the last year of his employment and after. Indeed, this was often the subject of many settlement negotiations with opposing counsel. Both sides have alleged multiple instances of inappropriate behavior from the other, the Parties engaged in a protracted eviction case in which Defendants sought and ultimately succeeded in evicting Plaintiff, the Parties litigated a workers' compensation claim allegedly arising out of issues during work, and Plaintiff initiated a discrimination action against Defendant at the New York State Division of Human Rights. Therefore, mutual releases are mutually beneficial here in order to settle all disputes between the Parties and allow the Parties to walk away with no threat of future litigations.

23. Plaintiff has reviewed and agreed to this Settlement Agreement. Plaintiff was actively involved in all stages of this litigation including and especially the mediations and the settlement conference. Plaintiff also attended the deposition of Hugo Barrios.

**LLR's Attorneys' Hourly Rates, Hours Spent on this Litigation, and Expenses (Lodestar)**

24. As discussed above, I worked on this matter in my role as Project Director of the Employment Law Project at the New York Legal Assistance Group ("NYLAG").

25. The total number of hours spent on this litigation was 283.50 hours.

26. A breakdown of NYLAG's attorneys' fees from inception of the case to date, is reflected below:

| Attorney Name | Position | Hours | Rate | Fees |
|---|---|---|---|---|
| Anamaria Segura | Attorney | 32 | $300 | $9,600 |

| Elissa Devins | Attorney | 17.5 | $300 | $5,250 |
|---|---|---|---|---|
| Mel Gonzalez | Attorney | 125 | $300 | $37,500 |
| Geno Nettle | Attorney | 5 | $300 | $1,500 |
| Maya A Cabral | Paralegal | 45 | $150 | $6,750 |
| Yael Fisher | Legal Fellow | 31 | $150 | $4,650 |
| Andrea Ashburn | Attorney | 28 | $300 | $8,400 |
| **Total** | | **283.50** | | **$ 73,650** |

27. NYLAG incurred fees in the amount of $6,101.83, consisting of court reporter fees related to two depositions, and mediator fees.

28. I have customarily been approved for rates in excess of $300 per hour. *See, e.g. de Assis da Silva v. Voltech Elec., Inc.*, No. 23-CV-10743-DLC, 2023 WL 11868491, at *1 (D. Mass. Oct. 30, 2023)(approving my fees at a $400 hourly rate hour), *Ordono v. Marriott International Inc.*, Case No. CGC-16-550454 (San Francisco Superior Court June 9, 2023) (approving my fees at a $375 hourly rate).

29. NYLAG attorneys and staff have also been approved for similar hourly rates. *See, e.g., Burks v. Gotham, et al.*, No. 20 Civ. 1001 (NRM) (PK) (E.D.N.Y.), ECF No. 90, 94 (approving attorneys fees award based on lodestar calculation of: "$100/hour for paralegals; $200/hour for legal fellows/law graduates; $350/hour for mid-level attorneys; and $450/hour for senior attorneys"); *Josefina v. New York*, 1:17-CV-7661 (VEC) (S.D.N.Y.), ECF No. 187-1, 187-2, 189 (approving attorneys fees award based on lodestar calculation of: "$350/hour for mid-level attorneys; $500/hour for senior attorneys; and $650/hour for director or partner-level staff."); *Philemon v. Aries Capital Partners, Inc.*, et al., 18-cv-1927 (CLP) (E.D.N.Y.), ECF No. 51, 58

(approving attorneys fees based on rate of $450 for partner, $350 for senior associate, and $200 for junior associate).

30. Ms. Devins is an attorney at NYLAG with over 20 years of experience and was integral in getting this litigation off the ground, including being primarily responsible for initiating this complaint and performing initial factual and legal research. Her rate is thus fair and reasonable in relation to my own.

31. Andrea Ashburn is a graduate of Columbia Law School and is currently a Justice Catalyst Legal Fellow within NYLAG's Special Litigation Unit. She began working on this matter in December 2024 and served an integral role toward reaching settlement in this case, including performing extensive factual and legal research, revising and provided assistance with several discovery motions, and preparing for the settlement conference.

32. Ms. Cabral is an experienced paralegal at NYLAG. The paralegal rate of $150 is one customarily utilized for Ms. Cabral and other paralegals in fee petitions for NYLAG, and is significantly lower than paralegal rates reported by similar firms for similar work. She worked on this matter since the beginning and contributed greatly at all stages of this litigation, including performing extensive translation services.

33. The other individuals that worked on this case no longer work for NYLAG but were integral in the early stages of this litigation up through the filing of the complaint. Anamaria Segura has almost 20 years of legal experience and was the prior director of the Employment Law Project at NYLAG. She is currently an associate with Getman Sweeny and Dunn. Geno Nettle is now an associate at Faruqi & Faruqi, LLP. Yael Fisher is now a law clerk in the Labor Enforcement unit of the New Jersey Attorney General's office.

34. In my best estimation, the time reflected above was time actually spent, in the exercise of reasonable judgment, by the attorneys and staff involved.

35. Plaintiff signed a retainer with NYLAG, in Spanish, authorizing NYLAG to take attorneys' fees and costs in the amount of up to 20% of the total recovery in this matter.

Signed under the pains and penalties of perjury on March 31, 2025

                                         */s/ Mel Gonzalez*
                                         Mel Gonzalez